UNITED STATES of America,
Plaintiff-Appellee,

v.

Timothy SMITH, Defendant-Appellant.

Nos. 81–1914, 81–2080.

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1982.

Howard Alabaster, Fort Lauderdale, Fla.
(Maurice Graham, Fort Lauderdale, Fla., on

the brief), of Brimmell & Graham, P.A., Fort Lauderdale, Fla., for defendant-appellant.

Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo. (Richard A. Stacy, U.S. Atty., and Carol Statkus, Legal Intern, Cheyenne, Wyo., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, SEYMOUR and KELLY *, Circuit Judges.

SEYMOUR, Circuit Judge.

Timothy Smith was convicted after a jury trial of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (1976). On appeal Smith contends that: (1) the indictment was insufficient; (2) venue was improper; (3) the trial court erred in permitting an alleged coconspirator to testify; (4) tape recorded conversations between the defendant and an undercover agent were erroneously admitted; and (5) there was insufficient competent evidence to support the conviction. We find these contentions to be without merit and affirm the conviction.

The government's case relied heavily on the testimony of Smith's alleged coconspirator, Kenneth Vann, who had pled guilty to conspiracy charges. Vann testified that he had met Smith about three years before. In the fall of 1978, Vann sold Smith about thirty pounds of Colombian marijuana in Fort Lauderdale, Florida. Several days later Smith returned about twenty pounds of that marijuana to Vann because of its poor quality. When Vann could not return it to his supplier, Smith agreed that Vann would take the marijuana to Wyoming and sell it so that Smith could get his money back. Vann thereafter sold the marijuana in Gillette, Wyoming, paying Smith part of the proceeds.

Later, Vann testified, he called Smith in Florida to ask if Smith could help him purchase some Sensimillian marijuana in Tulsa, Oklahoma, which would be more convenient for Vann because it was closer to Gillette than was Fort Lauderdale. Smith gave

Vann the phone number of Joe Pierre in Tulsa, who on about three occasions supplied Vann with marijuana which he sold in Gillette. In November 1979, Vann met Smith and Pierre in Tulsa, where Smith "fronted" Vann about thirty pounds of Thai sticks (marijuana) worth about $16,000. Vann was to sell the marijuana and then pay Smith. When Vann returned to Gillette, he was unable to sell the marijuana and could not pay Smith the money he owed him.

Vann's testimony was corroborated by several other witnesses who testified that Vann knew Pierre and Smith. Charles Miller, one of Vann's friends in Gillette, testified that Smith called him three or four times looking for Vann. He also testified that he called Smith in January 1980, at which time Smith said Vann owed him about $20,000. Telephone records also showed that calls had been made between houses where Vann stayed in Gillette, and Pierre's house in Tulsa and Smith's number in Fort Lauderdale.

Kent Florence, a Drug Enforcement Administration agent, testified concerning six taped telephone conversations he had had with Smith between February 28 and May 29, 1980. The tapes were admitted into evidence. In those conversations, agent Florence represented himself as "Vern from Montana" and claimed to be looking for Vann, who owed him some money. Smith's responses indicated that he knew Vann and that Vann also owed him money. Tom Pagel, a special agent with the Wyoming Division of Criminal Investigation, testified that he had been present when Florence made the tapes. He also identified Smith's voice on the tapes, based on his meeting with Smith in June 1980.

I.

SUFFICIENCY OF THE INDICTMENT

Smith charges the indictment was fatally vague. It reads:

"Between approximately January 1, 1978 and December 31, 1980, in the Dis-

---

* Honorable Patrick F. Kelly, United States District Judge, District of Kansas, sitting by desig-

nation.

trict of Wyoming and elsewhere, the Defendant TIMOTHY SMITH did unlawfully, knowingly and intentionally conspire with Kenneth Vann and others as yet unknown, to distribute and possess with intent to distribute quantities of marijuana, a controlled substance.

"It was part of this conspiracy that the Defendant TIMOTHY SMITH and co-conspirator Kenneth Vann supplied each other with various types of marijuana, such as Columbian, Sensimillian and Thai sticks, for purposes of resale and redistribution to others in Gillette, Wyoming, and elsewhere.

"In violation of 21 U.S.C. § 846."

Rec., vol. I, at 1. We begin by noting "that an indictment under section 846 need not allege overt acts and is basically sufficient if set out substantially in the words of the statute." *United States v. King,* 521 F.2d 61, 63 (10th Cir.1975) (per curiam). The indictment here meets that requirement.

Smith argues that the indictment is nevertheless inadequate to inform him fairly of the charge against which he was required to defend, and to enable him to plead former jeopardy in the event future proceedings are brought against him for a similar offense. *See Russell v. United States,* 369 U.S. 749, 763–66, 82 S.Ct. 1038, 1046–48, 8 L.Ed.2d 240 (1962). Smith refers us to *United States v. Cecil,* 608 F.2d 1294 (9th Cir.1979), where the Ninth Circuit held invalid an allegedly similar indictment:

"The present indictment is a rather barren document. Aside from tracking the language of the pertinent statutes in setting out the elements of the offenses with which defendants were charged, the indictment makes only two specific allegations concerning the conspiracies. It states that the conspiracies occurred in Arizona, Mexico, and elsewhere and offers the names of some of the alleged co-conspirators. The indictment fails to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof. More importantly, the indictment fails to place the conspiracies within any time frame. The language 'beginning on or before

July, 1975, and continuing thereafter until on or after October, 1975,' is open-ended in both directions.

"In view of these deficiencies, we find that the indictment fails to allege sufficient facts to facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on facts presented to the Grand Jury."

608 F.2d at 1296–97.

■ In this case, however, we do not have an open-ended time frame but a beginning date of January 1, 1978, and an ending date of December 31, 1980. In addition, although Vann is the only coconspirator named, this was not a large conspiracy, and he was the most significant individual in the picture of the conspiracy that the prosecution presented to the jury. Moreover, the indictment contains additional facts not included in the *Cecil* indictment. It lists three types of marijuana that Smith and Vann allegedly supplied each other, and specifies Gillette, Wyoming, as one site for its resale. These details satisfy us that the indictment was sufficient to inform Smith fairly of the charge against him. Moreover, "this is not a case where the grand jury may have had a concept of the scheme essentially different from that relied on by the Government before the trial jury." *United States v. Radetsky,* 535 F.2d 556, 565 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976).

■ Smith was also provided a bill of particulars by the Government. As we noted in *Radetsky:*

"While a bill of particulars cannot save an invalid indictment, . . . it can serve to give adequate notice for trial preparation in these circumstances. . . . Likewise the bill of particulars, together with the record evidence of exhibits and testimony, affords protection against double jeopardy since the whole record is available to avoid being placed twice in jeopardy for the same offense. . . . And we are satisfied that the indictment . . . adequately alleged the facts in order to determine that an offense was stated sufficiently to support a conviction if one should be had."

*Id.* at 563 (citations omitted). The bill of particulars in this case incorporated the transcript of a statement by Vann. Although it was supplied only three weeks before trial and specific dates of alleged transactions were not included, we believe that Vann's statement was sufficiently specific to enable Smith to prepare a defense. Furthermore, defense counsel was allowed to inspect the government's file and the grand jury testimony of witnesses about eight days before trial and on the day of trial, respectively. Transcripts of the tapes were provided, and the tapes were made available for inspection or copying shortly after arraignment.

Finally, our review of the indictment, the bill of particulars, and the record satisfies us that Smith is fully protected against the possibility of double jeopardy from future prosecutions. *See id.*

## II.

### VENUE

■ Smith contends that venue was improper in the District of Wyoming because the alleged crime was not committed there and he had never been in Wyoming. Smith's argument lacks merit because "[i]t is settled that 'venue as to prosecution of all members of a conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators.'" *United States v. Petersen,* 611 F.2d 1313, 1333 (10th Cir.1979) (quoting *United States v. Overshon,* 494 F.2d 894, 900 (8th Cir.1974)), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). Clearly Vann's sales of marijuana in Gillette and his telephone calls to Pierre and Smith from Gillette were overt acts in furtherance of the conspiracy. Venue was proper in Wyoming whether or not Smith had ever been there himself.

## III.

### COCONSPIRATOR TESTIMONY

Smith argues that it was error for the trial court to permit Vann to testify. He points out that under *Petersen* and *United States v. Andrews,* 585 F.2d 961 (10th Cir. 1978), the admission of coconspirator statements is proper only after the existence of a conspiracy is shown by independent evidence. Smith asserts that there was no such independent evidence here. However, Smith's argument reflects a fundamental misunderstanding of the *Petersen-Andrews* rule.

*Petersen* and *Andrews* both considered the effect of Fed.R.Evid. 801(d)(2)(E), which provides that a statement which would otherwise be hearsay (and therefore inadmissible under Fed.R.Evid. 802) is *not* hearsay if it is "offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." *Andrews* held that

"a district court judge, under Rule 104 of the Federal Rules of Evidence, must determine, prior to admission of the hearsay statement, as a factual matter, that the Government has shown by independent evidence that it is more likely than not that (1) the conspiracy existed; (2) the declarant and the defendant against whom the conspirator's statement is offered were members of the conspiracy; and (3) the statement was made during the course of and in furtherance of the objects of the conspiracy."

*Petersen,* 611 F.2d at 1330. *Petersen* then laid out a procedure the trial court was to use, following *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

■ When the government called Vann as a witness, Smith persuaded the district court that these cases were applicable and asked him to hold a *James* hearing out of the jury's presence to determine whether there was independent evidence of a conspiracy. The court did so, hearing testimony by both Vann and other witnesses. On appeal, Smith asserts that Vann's testimony, as a coconspirator, was not admissible as independent evidence of the conspiracy. The flaw in Smith's argument is simply that Rule 801(d)(2)(E) and the cases construing it are irrelevant to the *direct*

*testimony* of a coconspirator. By definition, hearsay is "a statement, *other than one made by the declarant while testifying at the trial or hearing,* offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c) (emphasis added). There is absolutely no need to fit Vann's *in-court* statements into the coconspirator provision of Rule 801(d)(2)(E). *See Laughlin v. United States,* 385 F.2d 287, 292 (D.C.Cir.1967) (rule requiring independent evidence of a conspiracy before admitting coconspirator out-of-court statements "does not exclude proof of a conspiracy by the direct testimony under oath of a party to it"), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968). Vann's testimony constituted sufficient independent evidence of a conspiracy and Smith's participation therein.[1]

## IV.

### DEFENDANT'S TAPE–RECORDED CONVERSATIONS

■ Smith asserts that the prosecution failed to lay a proper foundation for the admission of the telephone conversations recorded by agent Florence. He relies on *United States v. McKeever,* 169 F.Supp. 426 (S.D.N.Y.1958), *rev'd on other grounds,* 271 F.2d 669 (2d Cir.1959), which set out seven factors that must be shown to establish a foundation for the admission of sound recordings.[2] Subsequently, however, the Second Circuit, while regarding the *McKeever* test "as a valuable formulation of the factors a trial judge should consider," cautioned that "the varying circumstances of particular cases in which one or another aspect of this problem may present itself

militate against our adoption of inflexible criteria applicable to all cases." *United States v. Fuentes,* 563 F.2d 527, 532 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). *See also United States v. Biggins,* 551 F.2d 64, 67 (5th Cir. 1977) (The trial court's "discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard we establish."). The "paramount purpose" is "ensuring the accuracy of the recording." *Id. See generally* Fed.R.Evid. 901.

Agent Florence, who had made the tapes, identified each tape, noting his initials and the date. He testified that the number he dialed had been shown by background investigation to be the one at the residence where Smith lived. Florence identified one voice on the tapes as his own; a second male voice identified himself as "Timmy." Florence's account of the conversations corresponded to the recordings. *See Biggins,* 551 F.2d at 67; *United States v. Buzzard,* 540 F.2d 1383, 1386 (10th Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977). Agent Pagel provided further support, testifying that he was present when Florence made and recorded the telephone calls, and identifying Smith's voice on the tape based on a later meeting with him. *See United States v. Watson,* 594 F.2d 1330, 1335 (10th Cir. 1979) ("[F]amiliarity with another's voice may be acquired either before or after the particular speaking which is the subject of the identification.") (citing Fed.R.Evid. 901(b)(5)), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Under these circumstances the trial judge did not abuse his discretion in admitting the tapes.

---

1. At oral argument on appeal, Smith's counsel suggested for the first time that Vann's testimony concerning out-of-court statements by Joe Pierre was improperly admitted. After a search of the record, we have found only one such statement in the presence of the jury. It was clearly admissible under Rule 801(d)(2)(E) because the trial judge had already found the existence of a conspiracy based on independent evidence.

2. The *McKeever* factors are:

"(1) That the recording device was capable of taking the conversation now offered in evidence.

"(2) That the operator of the device was competent to operate the device.

"(3) That the recording is authentic and correct.

"(4) That changes, additions or deletions have not been made in the recording.

"(5) That the recording has been preserved in a manner that is shown to the court.

"(6) That the speakers are identified.

"(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement."

169 F.Supp. at 430.

## V.

### SUFFICIENCY OF THE EVIDENCE

Finally, Smith argues that the evidence was insufficient to support a conviction. He contends that, even accepting Vann's testimony, evidence of conspiratorial agreement was lacking. "Conspiracy by nature involves secrecy and thus the proof to support a conviction is necessarily indirect. The elements of the crime may be established by circumstantial evidence and the common purpose inferred from the development or combination of circumstances." *United States v. Jackson,* 482 F.2d 1167, 1173 (10th Cir.1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). Viewing the evidence in the light most favorable to the Government, as we must, we are convinced that there was sufficient substantial evidence, as discussed above, from which a jury could find Smith guilty beyond a reasonable doubt. *See Watson,* 594 F.2d at 1337.

The conviction is affirmed.