**UNITED STATES of America, Plaintiff,**

**v.**

**Martin Bradford PEES and Maura Beth McNeill, Defendants.**

**No. 86–CR–153.**

United States District Court, D. Colorado.

Oct. 1, 1986.

James Bredar, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Scott H. Robinson and Harold Haddon, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The defendants in this case are two eighteen year old students who have no previous convictions. They are charged with two felony counts of conspiring to sell and selling two ounces of MDMA (Ecstasy) to a Drug Enforcement Agent in violation of 21 U.S.C. §§ 841(a)(1) and 846. Each of the defendants has moved to suppress evidence, to sever trials, and to dismiss. On one point, there is no existing authority in this circuit so I deem it appropriate to issue a written opinion.

Defendant Beth McNeill sold one-eighth ounce of 3.4 methylenedioxymethamphetamine, MDMA, commonly known as "Ecstasy," for $120.00 to a DEA agent on May 15, 1986. McNeill informed the agent at that time that if he wished to purchase more of the drug, he would have to do so immediately since her "supplier was leaving town". A second deal was then arranged by telephone on May 20, 1986. During the course of this telephone conversation, McNeill continually relayed communications between the agent and a friend there with her. The agent asked to speak directly to the friend (the friend identified himself as "Brad" who, allegedly, is the defendant Pees). The agent and Brad made final arrangements for completion of the deal. The agent then went to McNeill's residence.

At defendants' residence, the agent, along with Pees and McNeill, walked to the backyard where Pees obtained two plastic baggies from a pair of pants hanging on a clothes line. The baggies contained a white powdery substance. Pees handed the baggies to McNeill and walked into the residence. The agent followed Pees and McNeill to a bedroom on the northwest side of the residence. In the bedroom, Pees and McNeill offered the agent a line of white powder on a piece of glass for his consumption. The agent declined.

McNeill handed the two plastic baggies to the agent. The agent weighed them and asked if he could test the drug using his test kit in his car. The three went to the car where the agent determined the substance to be Ecstasy-MDMA. The agent told Pees and McNeill his money ($4,500) to purchase the two ounces of the drug was located in the trunk of his car. Upon exit-

ing the car, Pees and McNeill were arrested.

In addition to confiscating the two ounces of Ecstasy-MDMA, searches incident to arrest were conducted. Approximately 23 grams of suspected Ecstasy-MDMA were seized from McNeill's person and approximately 23 grams of suspected cocaine were seized from Pees. Following the arrest, a search of the house was conducted. Another 23 grams of Ecstasy-MDMA were seized from Pees' bedroom.

Defendants were indicted on one count of knowingly and willfully conspiring to distribute approximately two (2) ounces of a Schedule I controlled substance in violation of 21 U.S.C. § 846. Defendants were also indicted on one count of knowingly and willfully distributing two (2) ounces of Ecstasy-MDMA in violation of 21 U.S.C. § 841(a)(1).

In May, 1985, the Administrator of the DEA, allegedly under authority of the attorney general, placed Ecstasy-MDMA in Schedule I[1] of the Controlled Substances Act pursuant to 21 U.S.C. § 811. Usually, to be placed in Schedule I of a controlled substance, a drug must be tested and certain findings made according to 21 U.S.C. § 812(b)(1) which sets forth the require-

ments for permanent scheduling of controlled substances in Schedule I.

There is, however, an emergency provision (§ 811(h)—Temporary Scheduling To Avoid Imminent Hazards To Public Safety) which allows the attorney general to place drugs in certain schedules *before* satisfying the requirements of § 812(b)(1).[2] This emergency provision (subsection 811(h)) was a 1984 amendment to the Comprehensive Drug Abuse Prevention and Control Act of 1970 contained in the Controlled Substances Act of 1970.[3] Ecstasy-MDMA was not scheduled in the original bill. Moreover, § 811(h) does not explicitly state the DEA has the authority to employ independently these emergency proceedings. Such powers are expressly given only to the attorney general, who may subdelegate those powers to the DEA. In 1973, the then acting attorney general subdelegated the powers vested in him under the Comprehensive Drug Abuse Prevention and Control Act provisions to the DEA.[4] The current U.S. Attorney General, however, has never expressly subdelegated the 1984 amendment to the 1970 act (§ 811(h)—temporary scheduling in Schedule I for emergency purposes) to the DEA.

In addition to scheduling Ecstasy-MDMA under the emergency provisions, the DEA

---

1. "SCHEDULE I" is a class of controlled substances consisting of substances found to have the most deleterious effect on the public. The scheduling provisions are found at 21 U.S.C. § 812, which states, in part:

> (a) There are established five schedules of controlled substances, to be known as Schedules I, II, III, IV, and V ... The findings required for each of the Schedules are as follows:
> (1) Schedule I.—
>  (A) The drug or other substance has a high potential for abuse.
>  (B) The drug or other substance has no currently accepted medical use in treatment in the United States.
>  (C) There is a lack of accepted safety for use of the drug or other substance under medical supervision ...

2. § 811(h)(1) states, in part:

> If the Attorney General finds that the scheduling of a substance in Schedule I on a temporary basis is necessary to avoid an imminent

hazard to the public safety, he may, by order and without regard to the requirements of subsection (b) of this section relating to the Secretary of Health and Human Services, schedule such substance in Schedule I if the substance is not listed in any other schedule in section 812 of this title or if no exemption or approval is in effect for the substance under section 335 of this title.

3. *See* "Comprehensive Drug Abuse Prevention and Control Act of 1970", Pub.L. No. 91–523, 84 Stat. 1236, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566. These provisions are set forth in the "Controlled Substances Act of 1970", Pub.L. No. 91–513, Title II, 84 Stat. 1245, (1970), *codified as amended* at 21 U.S.C. §§ 801–904 (1982). *See also* "Dangerous Drug Diversion and Control Act of 1984" ("the 1984 Amendment"), Pub.L. No. 98–473, 98 Stat. 2070 (1984) *reprinted in* 1984 U.S.Code Cong. & Adm.News p. 3182.

4. 38 Fed.Reg. 18380 (1973). *See also* 28 C.F.R. Section 0.100(b) (1985) (*as amended* Oct. 27, 1985, 46 Fed.Reg. 52348).

also sought to obtain *permanent* scheduling of Ecstasy-MDMA in Schedule I pursuant to § 812(b)(1). On June 6, 1984, the Secretary of Health and Human Services reported to the DEA that Ecstasy-MDMA had a high potential for abuse, presented a significant risk to public health, and should be placed in Schedule I on a permanent basis. Public hearings before an Administrative Law Judge were commenced in July 1984 and continued until early 1986.

On May 22, 1986, (two days after defendants allegedly committed the crimes but one day before the original indictment was filed) Administrative Law Judge Francis L. Young ruled Ecstasy-MDMA could neither: (1) be *permanently* placed in Schedule I (because it does have "a currently accepted medical use in treatment and it does not lack accepted safety for use under medical supervision"); nor (2) be *permanently* placed in Schedule II (because "it does not have a high potential for abuse"). Therefore, the ALJ ruled Ecstasy-MDMA must be categorized as a Schedule III substance. *See In The Matter of MDMA Scheduling,* Opinion and Recommended Ruling, Findings of Fact, Conclusions of Law, and Decision of Administrative Law Judge, No. 84–48 (May 22, 1986 at pp. 65–66, 68).

While these proceedings were in progress during 1985, the DEA continued to gather information concerning the harm and abuse of Ecstasy-MDMA. In April, 1985, the 22nd Expert Committee of the World Health Organization recommended that Ecstasy-MDMA be controlled in Schedule I. 50 Fed.Reg. 23118 (May 31, 1985).

Based on this information, and recognizing the permanent scheduling procedures for Ecstasy-MDMA were likely to continue until the end of 1985, the DEA gave notice of its intent to invoke the emergency scheduling procedures of § 811(h) to classify Ecstasy-MDMA in Schedule I on an interim basis. The notice was published on May 31, 1985.[5] The DEA notified the Secretary of Health and Human Services of its planned scheduling of Ecstasy-MDMA. The order scheduling the drug as such became effective in July of 1985. Pursuant to 21 U.S.C. § 811(h)(2), the DEA extended the temporary emergency scheduling to January 1, 1987. 51 Fed.Reg. 21911 (June 17, 1986).

On August 7, 1986, a hearing was held in order to resolve all pending motions. A list of those motions follows:[6]

(1) Motion For Severance of Defendants and For Relief From Prejudicial Joinder,

(2) Motion To Suppress For Use As Evidence All Items Seized in the Search on May 20, 1986,

(3) Motion To Dismiss (I) For Failure To Charge an Offense and Lack of Jurisdiction, and,

(4) Motion To Dismiss (II).

These motions consolidate the separate motions filed by each of the two defendants.

## (1) MOTION FOR SEVERANCE OF DEFENDANTS AND FOR RELIEF FROM PREJUDICIAL JOINDER

Both defendants requested separate trials because: (1) each may be antagonistic

---

5. 50 Fed.Reg. 23118–20 (May 3, 1985) (amended July 12, 1985, to correct misspelling). 50 Fed. Reg. 28395–971.

6. The list set forth is not comprehensive because additional motions were heard but were summarily disposed of or have since become moot. Those motions were: "Motion for Disclosure of Inducements to Informant" (no such inducements exist); "Motion to Suppress Inaudible Recordings" (the parties stipulated to the audibility and to the inaudibility of two cassette recordings and after listening to the third recording I have decided it is inaudible based on the discretionary authority granted to district court judges in *United States v. Hodges,* 480 F.2d 229 (10th Cir.1973)); "Motion to Suppress All Items Seized on May 20, 1986", (the motion has become partially moot because evidence seized in defendants' home and from their person will not be submitted in the government's case-in-chief pursuant to the superseding indictment, however, I still must rule with respect to limited admissibility and use of this evidence), and, finally, "Motion for Discovery and for Production of Favorable Evidence" (the government agreed to comply with these various discovery requests to the extent it is possible).

toward the other; and, (2) the quantity and quality of the evidence against defendants is substantially different.

Rule 8(a) of the Fed.R.Crim.P. authorizes joinder of offenses if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts connected together or constituting parts of a similar scheme or plan". Defendants' actions clearly fit within this description. They both arranged the deal over the telephone, were both present during the whole transaction, and, generally, acted jointly pursuant to a common scheme or plan.

Defendants must show clear prejudice resulting from joinder, *United States v. Strand*, 617 F.2d 571, 575 (10th Cir.) *cert. denied* 449 U.S. 841, 101 S.Ct. 120, 60 L.Ed.2d 48 (1980). The decision to grant a severance is within the sound discretion of the trial court and will not be reversed in the absence of a strong showing of prejudice—the fact that severance would improve chances for aquittal is not sufficient. Defendants fail to make this showing since: (1) the fact that their defenses may be antagonistic is purely speculative and "mere conflicting defenses do not, standing alone, constitute the showing of prejudice necessary for judicial severance", *United States v. McClure*, 734 F.2d 484, 488 (10th Cir.1984); and, (2) disparity in the quantity and quality of evidence does not justify severance, *United States v. Dill*, 693 F.2d 1012, 1014 (10th Cir.1982), "the fact the prosecution may have a stronger case against one defendant does not entitle either defendant to a separate trial." Most importantly, the evidence to be used against defendants is the same two ounces of Ecstasy-MDMA defendants jointly sold to the agent. The motion is denied.

## (2) MOTION TO SUPPRESS FOR USE AS EVIDENCE ALL ITEMS SEIZED IN THE SEARCH OF MAY 20, 1986

### A. *McNeill's Motion To Suppress*

McNeill states that on May 20, 1986, her home was searched, 23.34 grams of Ecstasy-MDMA were seized, and her person was searched on the same date and 23 grams were seized. She argues the searches and seizures were not pursuant to a search warrant, nor did the government have an arrest warrant. She further asserts no probable cause existed nor were exigent circumstances present to justify the searches and seizures. Therefore, she moves to suppress the evidence.

The search incident to arrest, where 23.-34 grams of the drug were seized from McNeill's person, will not be offered as Rule 404(b) evidence in the government's case-in-chief at trial. The government, however, argues the evidence can be offered in its rebuttal case if appropriate. The undercover "hand-to-hand" purchase of two ounces of Ecstasy-MDMA will be offered in evidence.

The government does not concede any of the searches or seizures were unlawful but cites no law to support its assertions. The search of defendant's home was undoubtedly a warrantless search and no exigent circumstances were present. Since the government will not offer that evidence at trial, however, the point is moot. Although the government states it does not intend to use such evidence in its case-in-chief at trial, it states it will use it in rebuttal, if appropriate.

Use of unconstitutionally seized evidence by the government in its case-in-chief or in rebuttal is forbidden under the "fruits of the poisonous tree" doctrine, *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). However, certain exceptions exist. If by "rebuttal" the government means to use the evidence for impeachment purposes when the defendant takes the stand, then the evidence can be used. *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Also, defendant may "open the door" to the admissibility of this illegally seized evidence by making sweeping assertions upon direct examination. *People v. Murdock*, 555 P.2d 849, 38 Colo.App. 223 (1983) (defendant, having elected to inject, at trial, statements made to a prison guard, was in no position to

challenge the admissibility of the statements); *Commonwealth v. Wright*, 339 A.2d 103, 234 Pa.Super. 83 (1975) ("If certain testimony was clearly the result of defendant's trial strategy, then he cannot subsequently complain of testimony which he produced").

■ Only in these ways can the government use the evidence. Otherwise, the evidence seized in the illegal search of McNeill's home cannot be offered at trial. Thus, the government shall be allowed to use as evidence only the 23 grams of Ecstasy-MDMA it purchased from defendant in the undercover operation. All other evidence can only be used in the limited manner outlined above. The motion is therefore denied in part and granted in part.

B. *Pees' Motion To Suppress*

Defendant Pees asserts any and all statements and physical evidence seized from him should be suppressed on the grounds such evidence was seized in violation of his Fourth, Fifth, and Sixth Amendment rights. No law or arguments are put forth beyond this assertion. The government will not use evidence seized from Pees' bedroom, thus, the ruling to suppress the evidence seized in the illegal search is also moot.

Similar to McNeill's motion, Pees' motion is denied because that evidence will not be submitted in the government's case-in-chief. The arrests producing the evidence the government plans to use at trial (the two ounces actually sold to the agent by defendants) were not conducted unlawfully and therefore can be used as evidence in the government's case-in-chief. Again, the illegally seized evidence seized from defendants' person and residence can only be used under the limited circumstances as outlined above.

(3) MOTION TO DISMISS (I) FOR FAILURE TO CHARGE AN OFFENSE AND FOR LACK OF JURISDICTION

A. *McNeill's Motion To Dismiss*

McNeill argues since Ecstasy-MDMA has been determined by an administrative law judge to be a Schedule III substance and not a Schedule I substance as charged; the indictment should be dismissed, or, in the alternative, reduced to violations involving a Schedule III substance as opposed to a Schedule I substance. She further argues since the ALJ determined the evidence (evidence available prior to July 1, 1985) demonstrated Ecstasy-MDMA met none of the mandatory requirements for placing it in Schedule I, the initial classification of the drug was arbitrary and capricious and in violation of defendant's constitutional right to equal protection.

The government contends, pursuant to 21 U.S.C. § 811(h), the attorney general may temporarily schedule a substance in Schedule I in order to avoid an imminent hazard to the public safety. Contrary to defendant's assertion, an emergency scheduling of a substance does not have to meet the requirements of 21 U.S.C. § 812. The ALJ's opinion, therefore, is irrelevant because his opinion involves placing Ecstasy-MDMA, as a permanent Schedule I substance. The instant case involved the temporary placing of Ecstasy-MDMA in Schedule I. Ecstasy-MDMA, however, although currently a Schedule I substance, is only a Schedule III substance for sentencing purposes.

■ The government is correct in its reading of the statute. The legislative history suggests it is exactly because of circumstances such as those presented in the instant case that the government is allowed to schedule a substance temporarily in Schedule I pending lengthy bureaucratic scheduling determinations. *See* 1984 *Code Cong. and Adm. News*, pp. 3445–46. The motion is denied.

To the extent McNeill argues the DEA abused its discretion in scheduling Ecstasy-MDMA in Schedule I because the evidence available at the time of the scheduling did not warrant such action, I shall address below since Pees makes the same claim.

B. *Defendant Pees' Motion To Dismiss For Failure To Charge An Offense And For Lack Of Jurisdiction*

Defendant Pees' motion asserts two arguments: (1) the DEA Administrator

lacked the authority to classify temporarily Ecstasy-MDMA as a Schedule I controlled substance; and, (2) the DEA abused its discretion in classifying Ecstasy-MDMA as a Schedule I substance and failed to comply with the procedural requirements of 21 U.S.C. § 811(h). I shall address each argument, and the government's respective responses, in turn.

### (1) *The DEA Lacked Authority*

Pees argues although the attorney general in 1973 subdelegated to the DEA the scheduling authority conferred by the Controlled Substance Act (CSA) for *permanent* scheduling, he never delegated to the DEA the emergency powers to classify substances temporarily under Schedule I. *See* 28 C.F.R. Section 0.100(b) (1985). Pees asserts the emergency temporary scheduling power is vested solely in the attorney general under the Dangerous Drug Diversion and Control Act of 1984 (the 1984 Act amends the CSA by granting the attorney general emergency powers to classify a substance temporarily in Schedule I).

On July 10, 1973, the attorney general subdelegated functions vested in him by the Comprehensive Drug Abuse and Prevention and Control Act of 1970 to the DEA. The 1984 Act conferred "emergency powers" on the attorney general beginning in 1984. Pees asserts such powers could not have been delegated to the DEA in 1973 because they did not then exist. He supports his argument by stating "penal statute[s] should be strictly construed against the government or parties seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed." Sutherland, Statutory Construction, Section 59.03, at 6–7. *See also United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) ("ambi-

guity concerning the ambit of criminal statutes should be resolved in favor of lenity"); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

Thus, strictly construed, Pees notes nothing in the CSA, the Comprehensive Drug Abuse and Prevention Act, the 1984 amendment to that Act (the Dangerous Drug Diversion and Control Act of 1984), nor the 1973 delegation of authority to the DEA gave the DEA authority to classify Ecstasy-MDMA temporarily as a Schedule I controlled substance. He completes his argument by stating it is fundamental that an executive agency cannot exercise powers which have not been actually delegated to the agency. *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (Court refused to construe a statute delegating the attorney general's wiretap authority as to subdelegate, by implication, such authority to the attorney general's executive assistant). Thus, the defendant's argument is that the attorney general's subdelegation in 1973 only applies to the Drug Abuse Prevention and Control Act of 1970, and does not extend to the emergency scheduling provision (§ 811(h)) contained for the first time in the 1984 amendment.

The government contends the more reasonable interpretation of the 1973 subdelegation from the attorney general to the DEA is that the subdelegation was intended to cover all authority under the Controlled Substances Act, including all consistent amendments to that Act. Since the 1984 legislation amended the 1970 act consistent with the intents and purposes of the 1970 act, the subdelegation extends to the temporary scheduling provisions.

The Tenth Circuit has not yet ruled on this narrow issue and neither party cites any case law directly on point.[7] I find the government's argument non-persuasive.

---

7. The government cites *United States v. Lippner,* 676 F.2d 456, 460–61 (11th Cir.1982), however, that case addresses the legitimacy of the 1973 subdelegation of the attorney general's powers under the 1970 Act to the DEA. The case makes no mention of any *amendments* to the 1970 Act, instead, the case is concerned with the subdelegation of the attorney general's powers to the

DEA under the alleged authority of an executive order. Defendants cite *United States v. Giordano, supra,* however, that case addresses the authority of the attorney general's executive assistant to carry out certain powers, it does not address the issue of how amendments to pre-existing acts are construed.

Its logic would mean the attorney general would only have to delegate his powers one time in a broad sweeping pronouncement and would not, therefore, have to delegate any subsequent legislation. Such a *carte blanche* authorization by Congress has never occurred. Great care must be taken in interpreting statutes to maintain due regard for the separation of powers demanded by our constitution.

It is a well-settled point of law that subdelegation of authority from the attorney general to an administrative agency is a valid authorization of power. *See Jay v. Boyd*, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1955) (attorney general's power to exercise discretion in granting or denying aliens' applications for suspension of deportation rulings may be subdelegated to special inquiry officers). The logical and necessary implication of that rule of law is that there must be an *affirmative act* on the part of the attorney general in which he subdelegates his authority. If the attorney general were not required to execute an affirmative act in subdelegating his authority, the authority of other administrative agencies *vis. a vis.* the authority of the attorney general would be hopelessly ambiguous and unworkable. Congress has never manifested an intent to allow administrative agencies to assume, by implication, the powers vested explicitly and exclusively in the attorney general without the *official* subdelegation of such powers by the attorney general in a manner subject to recordation and accountability.

■ This motion to dismiss is granted because the attorney general in 1984 did not subdelegate the powers vested in him by the 1984 Amendment (The Dangerous Drug Diversion and Control Act of 1984) to the DEA. The failure to subdelegate those powers, therefore, made it legally impossible for the DEA Administrator to have had the requisite authority to schedule any substance in Schedule I pursuant to The Dangerous Drug Diversion and Control Act (§ 811(h)). Thus, the charges against defendants are legally invalid. There is nothing to prevent the attorney general from making such a subdelegation, but it is clearly his office to do so or take other action he might deem appropriate. It is clearly not the business of the courts or a subordinate to make that decision for him.

### (2) *The DEA Abused its Discretion*

Next, Pees argues even if the DEA had actual authority under the 1984 Act, the decision to classify Ecstasy-MDMA under Schedule I was an abuse of discretion. He asserts much evidence was available which strongly suggested Ecstasy-MDMA had medical and scientific value. Nevertheless, the DEA placed it in Schedule I. He asserts the DEA made allegations as to Ecstasy-MDMA's "abuse" and "danger" but offered no evidence to that effect; therefore, no rational basis existed to place it in Schedule I.

At best, there was conflicting evidence at the time of the emergency scheduling of Ecstasy-MDMA in 1985. For instance, the Secretary of Health and Human Services had stated previously, Ecstasy-MDMA has a high potential for abuse and presents a significant risk to public safety. The World Health Organization, as well as widespread public input, suggested the drug presented a danger to public safety and a high level of abuse.

■ I cannot say the decision to place Ecstasy-MDMA was "clearly erroneous". I reserve ruling on the constitutionality of the rather bold statement in 21 U.S.C. § 811(h)(6) that a classification under 811(h) "is not subject to judicial review" because I seriously doubt that *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803) will be overruled next term. I note that this section of the statute, however, is indicative of Congress' strong intent that the judiciary not "second guess" the scheduling decisions of the Attorney General, especially when those decisions are "reasonable" and lack a strong showing of prejudice or clear error.

Pees also asserts the DEA failed to comply with the publication requirements set forth in § 811(h). Instead of publishing a

notice in the *Federal Register* and then filing a notice thirty days later, the DEA filed the notice that was supposed to be filed thirty days later along with the notice in the *Federal Register* (both were filed on May 31, 1985, however, the second notice was stipulated not to go into effect until July 1, 1985—more than thirty days later). Pees asserts this is not a mere technical violation since the thirty-day period is required in order to elicit comments from the Secretary of Health and Human Services. Thus, the DEA circumvented this procedural safeguard.

■ This argument is without merit. The DEA did not circumvent any procedural safeguard. The Secretary of Health and Human Services was still free to make her comments and was encouraged to do so. Moreover, the thirty-day waiting period was *not* violated (May 31, 1985—date of notice; July 1, 1985—date the order was to go into effect). If anything, notice of the order was simply given early since the order was not to go into effect until more than thirty days later.

■ Pees further argues § 811(h) violates due process since it requires emergency scheduling exclusively into Schedule I and not into any of the other five schedules. He also claims very important criteria are not required for the attorney general to schedule a substance temporarily into Schedule I (i.e., "potential for abuse, scientific evidence of its pharmacological effect, the state of scientific knowledge regarding the substance itself, the substance's psychic or physiological dependence liability, and whether the substance is an immediate precursor of a substance already controlled).

First, the whole reason § 811(h) places a substance into Schedule I is because the drug is deemed to be, by definition, that dangerous; further, Pees himself admits

that for sentencing purposes, congress did not intend for violators of the temporary provisions to be punished with the same harsh penalties attached to Schedule I offenses.[8]

Second, and related to defendant's first argument, if the attorney general had to apply all of the criteria suggested by defendant, there would be no possible way to enact any emergency provision whatsoever because it would take too long to satisfy all of the procedural requirements. Recall why the legislation was enacted in the first place—to keep dangerous "designer drugs" off the street while permanent scheduling proceedings are underway. Section 811(h) is for *temporary* scheduling so that in the future, additional scientific and medical criteria can be applied in order to make a final determination regarding the permanent scheduling of the substance in question.

## (4) MOTION TO DISMISS II

Finally, McNeill asserts the indictment is silent as to how she is connected with the alleged conspiracy. She also states no overt acts are listed in the indictment. Because the indictment is "vague" and "non-specific", she asserts it is impossible for her to be apprised of the allegations against her or to prepare a defense to the charge. She moves, therefore, for dismissal or, in the alternative, a bill of particulars.

■ In response, the government states the Tenth Circuit has held an indictment under 21 U.S.C. § 846 need not allege overt acts and will be sufficient if set out substantially in the words of the statute. *United States v. Smith*, 692 F.2d 693, 696, (10th Cir.1982). In the instant case, as in *Smith*, the indictment specifies the date, parties, place of conspiracy, and the drug in question. This meets the sufficiency requirements. *See Russell v. United*

---

**8.** The legislative history states:

"If a substance is subject to the temporary control provided in the new subsection (h) of 21 U.S.C. § 811, the penalty for its illegal manufacture, distribution, dispensing, or possession with intent to engage in such conduct, is to be treated

the same as that provided in 21 U.S.C. 841(b)(1)(C) for Schedule III substances." *See* S.Rep. No. 98–225, 98th Cong., 2d Sess., *reprinted in*, 1984 U.S.Code Cong. & Ad.News, 3182, 3446.

*States,* 369 U.S. 749, 763–66, 82 S.Ct. 1038, 1046–48, 8 L.Ed.2d 821 (1962). For the same reasons outlined above, a bill of particulars is not required. The motion is denied. *United States v. Radetsky,* 535 F.2d 556 (10th Cir.) *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976).

IT IS THEREFORE ORDERED THAT:

1. Defendants' Motion for Severance of Defendants and Relief from Prejudicial Joinder is denied.

2. Defendants' Motion to Suppress for Use as Evidence all Items Seized in the Search on May, 20, 1986 is denied; however, the evidence can be used for the limited purposes of impeachment or in response to defendants' raising the issue.

3. Defendants' Motion to Dismiss for Failure to Charge an Offense and Lack of Jurisdiction is granted.

4. Defendant McNeill's Motion to Dismiss (II) is denied.