David Harold JOHNS, and William H. "Smokey" Warren, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F–83–769, F–83–770.

Court of Criminal Appeals of Oklahoma.

Aug. 28, 1987.

Rehearing Denied Oct. 8, 1987.

As Corrected Oct. 6, 1987.

Patti Palmer, Deputy Appellate Public Defender, Mark Barrett, Asst. Appellate Public Defender, Norman, for appellants.

Michael C. Turpen, Atty. Gen., William H. Luker, Hugh A. Manning, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellants, David Harold Johns and William H. "Smokey" Warren, were jointly charged, tried and convicted in Muskogee County District Court, in Case No. CRF–82–515, for Conspiracy to Commit Armed Robbery (Count I) (21 O.S.1981, § 421), Attempted Armed Robbery (Count II) (21 O.S. 1981, § 801), and First Degree Felony-Murder (Count III) (21 O.S.1981, § 701.7(B). Punishment was fixed, respectively, at ten (10) years, twenty (20) years, and life imprisonment. Appellants perfected separate appeals to this Court, which we have consolidated herein for review.

On the evening of December 7, 1981, the decedent, Tom Crossland, was arriving at his residence in Muskogee, Oklahoma, around 9:20 p.m., when Mrs. Crossland was aroused by her dogs' barking and by the sound of angry voices outside. She subsequently heard four gunshots. Upon leaving her residence to investigate, Mrs. Crossland found her husband lying on the ground behind his automobile. Mrs. Crossland's sister, Sybil Nails, lived in the residence next door. On the same evening, Ms. Nails was sitting in the driveway of her home with a friend, Margaret Strickland. As the women drove in, Ms. Strickland observed two males in the Crossland yard. The two women then observed the decedent drive up to his residence. Ms. Strickland saw a tall white man point a gun at a shorter white man, who was approaching the house. Both women then heard the firing of four gunshots in rapid succession and saw a tall white man running from the scene. The women then ran to find the decedent lying on the ground.

The decedent was taken to Muskogee General Hospital where he was pronounced dead on arrival. The medical examiner testified that the decedent sustained three fatal gunshot wounds, and that the shots were fired from no closer than two feet away from the decedent. The OSBI ballistics laboratory determined that the three slugs taken from the decedent's body were fired from a .22 caliber pistol. A .32 caliber handgun, which had recently been fired, was retrieved from underneath the decedent's body at the scene. Also recovered from the scene was a spent .32 caliber cartridge casing, which matched the handgun found underneath the decedent. A slip of paper, on which the name and phone number of appellant Warren was written, was found in the decedent's wallet.

On the day following the shooting, appellant Johns was observed at Muskogee General Hospital, where he attempted to obtain pain relievers for a migraine headache. The medical technician initially noticed blood on Johns' fingers and, after refusing to disburse pain relievers, noticed that Johns had left a spot of blood on the gurney where he had been sitting. Shortly thereafter, Johns entered the Emergency Room and admitted himself for treatment of a gunshot wound. The slug had entered his right buttock and exited his left groin. Later that day, two officers questioned Johns about the gunshot wound. Johns denied knowing appellant Warren, but admitted that he knew Warren as "Smokey" when the officers described the pink Cadillac which Warren drove.

During the State's case-in-chief, Roy Grayson testified that he was approached by his friend, appellant Johns, who asked if Grayson wanted to make some big money. Johns told Grayson that he had a friend, appellant Warren, who knew someone they could rob. Later, the three men met and rode together in Warren's pink Cadillac discussing plans for the robbery. They drove by the decedent's home and made plans to hide in the bushes. The decedent was the men's target, because he carried large sums of money won from gambling. On the night of the homicide, the three men met again and saw the decedent drive away from his home. Insofar as appellant Warren had gambled with the decedent in the past, the men surmised that the decedent was going to Sallisaw. They decided to rob the decedent that night. In the course of discussing how they would rob the decedent, Warren stated that he did not want the decedent hurt, and warned the other men that the decedent carried a gun. Warren gave Johns a .22 caliber handgun for the robbery. Johns complained, however, that the gun was not large enough.

Grayson testified that he and Johns hid in the bushes until the decedent came home. Warren waited in his car. When the decedent walked up his driveway, Johns jumped out from behind the bushes and yelled: "Hold it, this is a stickup." When the decedent motioned toward his pants, Johns fired three shots at him. Johns fled while the decedent was stumbling toward the ground, but the decedent managed to fire one shot at Johns. Later that evening, Grayson went to Johns' residence and discovered that Johns had been shot. At trial, several witnesses testified on behalf of the appellants. Appellants

denied any involvement in the episode, and set forth the defense of alibi. Johns also testified in his own behalf.

## I.

 Appellants first claim that the trial court erred in permitting coconspirator Roy Grayson to testify concerning the conspiracy to commit armed robbery without first showing by independent evidence that a conspiracy existed and that the appellants were members of that conspiracy. We disagree. In rejecting this precise argument, the Tenth Circuit reasoned as follows:

> The flaw in [appellant's] argument is simply that Rule 801(d)(2)(E) [12 O.S. 1981, § 2801(4)(b)(5)] and the cases construing it are irrelevant to the *direct testimony* of a coconspirator. By definition, hearsay is 'a statement, *other than one made by the declarant while testifying at the trial or hearing,* offered in evidence to prove the truth of the matter asserted.' Fed.R.Evid. 801(c) [12 O.S. 1981, § 2801(3)] ... There is absolutely no need to fit [the witness'] *in-court* statements into the coconspirator provision of Rule 801(d)(2)(E). *See Laughlin v. United States,* 385 F.2d 287, 292 (D.C. Cir.1967) (rule requiring independent evidence of a conspiracy before admitting coconspirator out-of-court statements 'does not exclude proof of a conspiracy by the direct testimony under oath of a party to it'), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968). [The witness' direct] testimony constituted sufficient independent evidence of a conspiracy and [appellant's] participation therein.

*United States v. Smith,* 692 F.2d 693, 697–98 (10th Cir.1982).

We adopt the foregoing rationale in *Smith* and hold likewise that the direct testimony of Grayson concerning his and the appellants' participation in the conspiracy and its existence did not constitute hearsay under 12 O.S. 1981, § 2801(3), and thus was properly admitted. Grayson testified at trial under oath and was subject to cross-examination. Grayson's testimony concerning his own participation in the crime and his observations of the appellants' conduct was not hearsay within the definition of 12 O.S. 1981, § 2801(3). *See Smith, supra.* Finally, the out of court statements made by Johns and Warren constituted party admissions under 12 O.S. 1981, § 2801(4)(b)(1), and thus Grayson's testimony concerning such statements was properly admitted. *See Brooks v. State,* 714 P.2d 217, 219 (Okl.Cr.1986); *Davis v. State,* 647 P.2d 450, 451 (Okl.Cr.1982). *See also United States v. Ruiz,* 579 F.2d 670, 676 (1st Cir.1978) ("Out-of-court statements of an accused, either oral or written, are routinely admitted in criminal cases."). This assignment of error is without merit.

## II.

 The appellants next allege that there was insufficient evidence to corroborate Roy Grayson's testimony as required by 22 O.S. 1981, § 742. We disagree. The testimony of an accomplice does not require corroboration as to all material respects. *Roberts v. State,* 571 P.2d 129, 134 (Okl.Cr. 1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977). "If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all." *Pierce v. State,* 651 P.2d 707, 709 (Okl.Cr.1982). Circumstantial evidence may adequately corroborate the accomplice's testimony. *Id.*

 The following independent evidence corroborates Grayson's testimony and connects appellant Johns with the commission of the offenses: The decedent's spouse heard four shots fired around 9:20 p.m. on December 7, 1981; the medical examiner testified that the decedent sustained three fatal gunshot wounds at close range; other witnesses testified that Johns was shot in the buttocks; a medical technician testified that sometime during the early morning hours of December 8, 1981, Johns showed up at a hospital emergency room requesting pain killers, had blood on his fingers, and left a spot of blood on the gurney

where he was sitting; Johns then admitted himself into a hospital for a gunshot wound which had entered his right buttock and exited his left groin; evidence was introduced showing that the deceased's .32 caliber handgun found under his body had recently been fired; a single spent .32 caliber cartridge casing matching the handgun was found at the scene; Johns admitted knowing Warren as "Smokey" and was familiar with the pink Cadillac driven by Warren.

■ The following independent evidence corroborates Grayson's testimony and connects Warren with the commission of the offenses: Warren's name and phone number were found in the decedent's wallet; Warren admitted driving a pink Cadillac and buying a .22 caliber handgun two months prior to the incident; one of the slugs removed from the decedent was identified as a .22 caliber slug by OSBI ballistics. We find that the foregoing facts are sufficient as a whole to corroborate Grayson's testimony as recited at the outset of this opinion, and to adequately connect the appellants with the commission of the offenses. Accordingly, "we are very reluctant to overturn the verdict of a jury when there is some evidence tending to connect the defendant[s] with the commission of the offense." *Glaze v. State*, 565 P.2d 710, 713 (Okl.Cr.1977). This assignment is without merit.

### III.

Next, we separately address the allegations of error made by the appellants concerning the instructions to the jury.

### A.

■ The appellants first assert that the trial court's instructions failed to state that the jury must consider whether there was corroborating evidence connecting each appellant separately to the offenses charged. Secondly, appellants argue that the prosecutor compounded this alleged error in closing argument. We disagree. The trial court gave the appellants' requested instructions on corroboration of accomplice testimony as Instructions No. 16, 16A and 17. Appellants neither requested further instruction concerning accomplice corroboration, nor objected to the instructions given. Thus, since the instructions given stated the applicable law, we find that the failure to object or submit alternative instructions waived this issue for appellate review. *See Peninger v. State*, 721 P.2d 1338, 1341 (Okl.Cr.1986). With regard to the alleged improper comment during argument, the failure of the appellants to make a timely specific objection waived all but fundamental error. *See Garcia v. State*, 734 P.2d 820, 824 (Okl.Cr.1987). Having found no fundamental error, this assignment is without merit.

### B.

■ Next, the appellants argue that the trial court erred by failing to instruct on second degree murder and first degree manslaughter. Appellants failed to preserve this issue for appellate review by objecting and by submitting written requested instructions. *See Millwood v. State*, 721 P.2d 1322, 1325–26 (Okl.Cr. 1986). We find no fundamental error. *See Wauqua v. State*, 694 P.2d 532, 534 (Okl. Cr.1985). Moreover, in light of the strong evidence of guilt, we cannot say that the appellants were deprived of a substantial right or that the failure to instruct on second degree murder or first degree manslaughter resulted in a miscarriage of justice. *See* 20 O.S. 1981, § 3001.1. This assignment of error is without merit.

### C.

■ The appellants also assert that the trial court erred in failing to give the appellants' requested instruction that coconspirator Grayson's prior felony conviction could be used by the jury in assessing his lack of credibility. The trial court did issue a general instruction on the credibility of witnesses, and Grayson's prior felony conviction was brought to the attention of the jury by defense counsel. Grayson was vigorously cross-examined by appellants regarding whether he received anything in exchange for his testimony. In light of the foregoing, we cannot say that the failure of

the trial court to deliver the requested instruction deprived the appellants of a substantial right or resulted in a miscarriage of justice so as to constitute reversible error. *See* 20 O.S. 1981, § 3001.1; *Foster v. State,* 714 P.2d 1031, 1037 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 249–50, 93 L.Ed.2d 173 (1986).

### D.

■ Finally, appellants contend that the trial court committed fundamental error by failing to give the jury a cautionary instruction on the weight to be given coconspirator Grayson's testimony. Although the appellants requested no such instruction, they argue that this Court mandated such an instruction in *Smith v. State,* 485 P.2d 771 (Okl.Cr.1971). However, this Court distinguished *Smith* in *Allen v. State,* 522 P.2d 243, 246 (Okl.Cr.1974), by noting that such cautionary instructions were required on "those occasions when statements made by an accomplice or informer are uncorroborated. While this requirement is, of course, necessary with uncorroborated testimony, the record in the instant case reveals such sufficient corroboration that the cautionary instruction is not necessary." Having previously found sufficient corroboration of coconspirator Grayson's testimony, this proposition is without merit.

### IV.

■ ▪ Next, we must reject the contention of the appellants that the jury did not represent a fair and impartial cross-section of the community because it was "death qualified" under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and was thus more conviction prone. *See Lockhart v. McCree,* 476 U.S. 162, —, 106 S.Ct. 1758, 1770, 90 L.Ed.2d 137 (1986); *VanWoundenberg v. State,* 720 P.2d 328, 331–32 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

### V.

■ Appellants next allege that the trial court committed reversible error by refusing to allow defense counsel to question a juror on her alleged mid-trial statements concerning threats having been made against Grayson. In *Wacoche v. State,* 644 P.2d 568, 572 (Okl.Cr.1982), this Court held that "where it appears that a juror converses with third parties during the trial and prior to deliberations, there must be a showing by the defendant that he was prejudiced." The trial judge has broad discretion in ruling on the issue of prejudice resulting from extraneous information being read or heard by the jury concerning the trial. *Id.*

During the course of the trial, defense counsel informed the court that a witness had heard jurors discussing the merits of the case during a recess. This witness testified during an *in camera* hearing that members of the jury were discussing "someone getting threatened." It was ascertained that Juror Goodwin was the juror referred to and, shortly thereafter, Juror Goodwin testified that she did not discuss anything concerning the alleged threats with any other juror. Defense counsel then called Winston Coulter who testified that he heard a tall lady tell a short heavy set lady that "they" had threatened Grayson with bodily harm. On cross-examination, Coulter admitted that he had previously been convicted of a felony within the last two months, and that he had known appellant Johns since childhood. From Coulter's description, it was ascertained that the two female jurors allegedly involved in discussing the threats were Juror Goodwin and Juror Daniels. The trial court denied defense counsel's request to question Juror Daniels, stating that Goodwin had already testified that no one on the jury had spoken to her about any threats. Based on the foregoing, the appellants have failed to show prejudice, and we cannot say that the trial court abused its discretion.

### VI.

■ Appellant Warren alleges that the trial court erred by denying his motion for severance. Although the appellant presented argument at preliminary hearing

and trial on his motion for severance, at no time did he argue or present evidence to show that the appellants had mutually antagonistic and inconsistent defenses. *See Hightower v. State,* 672 P.2d 671, 677 (Okl. Cr.1983). "The granting or denying of such a motion is discretionary with the trial court and its ruling will not be disturbed on appeal, absent a clear showing of an abuse of discretion resulting in prejudice." *Master v. State,* 702 P.2d 375, 378 (Okl.Cr. 1985). Appellant has failed to make the necessary showing here.

## VII.

 Appellant Warren also contends that the trial court erred in admitting his statements which were allegedly the fruit of an illegal arrest. This issue turns on the question of whether the appellant was under arrest when he was transported to the Muskogee Police Station. The record rebuts appellant's contention insofar as it shows that appellant Warren voluntarily accompanied the officers to the police station for questioning. Officer McDaniel testified that the appellant was not under arrest at that time, and that they would not have transported Warren to the station against his will. Once at the police station, appellant made his statements voluntarily after first being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and executing a written waiver. We recognize that an accused is entitled to the full protection of the fourth and fourteenth amendments when the police, without probable cause or judicial authorization, *forcibly* remove a person from his home or other place in which he is entitled to be, and transport him to the police station where he is briefly detained for investigative purposes. *See Hayes v. Florida,* 470 U.S. 811, 815–17, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985). Such seizures are sufficiently like arrests to require probable cause. *Id. Hayes* is distinguishable from the instant case, however, because the record shows that the appellant Warren voluntarily accompanied the officers to the police station. *See State v. Hoffpauir,* 44 Wash.App. 195, 722 P.2d 113, 115–16 (1986). Accordingly, the state-

ments were not the result of an illegal arrest. *See Ellis v. State,* 652 P.2d 770, 771 (Okl.Cr.1982). This assignment is without merit.

## VIII.

 In their final assignment of error, the appellants contend that their convictions and punishments for both attempted robbery and felony-murder, where the attempted robbery served as the underlying felony, violated the double jeopardy clause of the Fifth Amendment. In *Jefferson v. State,* 675 P.2d 443, 447 (Okl.Cr.1984), this Court vacated a twenty (20) year sentence for robbery with a dangerous weapon where it served as the predicate for a felony-murder conviction for which the defendant received life imprisonment. *See also Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma,* 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977). On the basis of the foregoing, the judgment and sentence for attempted robbery must be vacated and remanded to the district court with instructions to dismiss.

 Finally, this writer would point out that in my view, both the conspiracy and the murder arose out of the same transaction and, therefore, the appellants should not be convicted and punished for both the conspiracy and the murder. *See Stohler v. State,* 696 P.2d 1038, 1041 (Okl.Cr.1985) (Parks, P.J., dissenting). In my view, the conspiracy merged into the attempted robbery, which served as the predicate for felony-murder, and thus the conspiracy conviction should also be vacated. However, a majority of this Court holds otherwise. *Stohler v. State,* 696 P.2d 1038, 1040 (Okl.Cr.1985). Accordingly, I am bound under the doctrine of *stare decisis* to affirm the conspiracy conviction.

Accordingly, the judgments and sentences of twenty (20) years for attempted robbery imposed upon both appellants are VACATED and REMANDED to the district court with instructions to DISMISS, and the judgments and sentences for con-

spiracy and first degree murder are AF-FIRMED.

BRETT, P.J., and BUSSEY, J., concur.