**James Howard HUCKABY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–88–838.**

Court of Criminal Appeals of Oklahoma.

Dec. 28, 1990.

Fred P. Gilbert, Brewster, Shallcross & Rizley, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., D. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

PARKS, Presiding Judge:

James Howard Huckaby, appellant, was convicted by a jury in Tulsa County District Court of First Degree Murder (21 O.S.Supp.1982, § 701.7(A)), Shooting with Intent to Kill (21 O.S.1981, § 652), and Conspiracy (21 O.S.1981, § 421), Case No. CRF–87–1285. He received sentences of life imprisonment and a fine of five thousand dollars ($5000.00) on each of the first two convictions and a sentence of ten (10) years imprisonment and a fine of five hundred dollars ($500.00) on the third, each to run consecutively.

At the trial of appellant, William "Butch" Morrow testified that he had been hired to kill Patsy Hendryx and that he did in fact shoot Hendryx and her sister Joyce Lambert. Lambert died from her wounds but Hendryx did not. The murder contract, Morrow testified, had been arranged by appellant and appellant provided the guns and transportation to complete the crimes. He also gave Morrow cash in the amount of $1,500.00 as payment for his services.

Morrow testified that on Saturday, March 28, 1987, he was helping a friend named Ron Lechner work on his motorcycle at Smith Motors in Tulsa, Oklahoma. Appellant was also at Smith Motors transacting business when he casually inquired if anyone knew a hit man. Morrow later approached appellant in private and said he might know someone who would kill for hire and appellant wrote his telephone number on a piece of paper and gave it to Morrow. Morrow later contacted appellant and after meeting one time, made arrangements to meet again so appellant could take him to execute the contract. The price agreed upon was fifteen hundred dollars ($1,500.00). Huckaby explained that the ex-husband of Patsy Hendryx was to pay two thousand dollars ($2,000.00) and that appellant would keep five hundred dollars ($500.00) for himself.

At approximately 5:00 p.m. on Monday, March 30, 1987, appellant picked Morrow up at a convenience store in a black Trans Am and took him to Patsy Hendryx' home.

Morrow cut the telephone line and then lay in wait for her to arrive home from work. Meanwhile, appellant parked nearby and prepared to pick Morrow up following the shootings. Appellant had informed Morrow on the trip to Hendryx' home that there might be another person with Hendryx and that both should be taken care of in that instance.

A short while later Hendryx arrived home with her sister. Each were shot once at a distance with a .38 caliber handgun. Morrow testified that he then shot each at a close range with a .12 gauge shotgun. He stated that as soon as he fired the last shot, he looked up and saw appellant drive into the driveway. Morrow scooped up Hendryx' purse and left.

Appellant drove Morrow home that evening and returned again later to give him fifteen (15) one hundred dollar ($100.00) bills. Morrow left the next day for New Jersey where he was soon arrested and returned to Oklahoma.

When appellant had inquired at Smith Motors on March 28th about a "hit man", a number of people heard him and saw him later give Morrow the piece of paper which contained his telephone number. A convenience store attendant saw someone with a dark sports car pick Morrow up the evening of March 30th. Morrow told a number of people during the course of the conspiracy that he had to go meet "Huck" or that "Huck" was paying him to kill a couple of people. Many of these various witnesses testified at trial.

I.

Appellant's first assignment of error is that it was a violation of the double jeopardy guarantees of both the Oklahoma and the federal constitutions for the State to have prosecuted and convicted him of both murder and conspiracy to commit murder. The gist of this assignment is that appellant's actions proven at trial amounted to only conspiracy to commit murder, and to have convicted him of the murder as well results in conviction twice for the same acts. To make these argu-

ments, appellant rests on the assumption that his actions went no further than to arrange the killing. He has also defined the murder for which he was convicted as "murder for hire."

Had the law and the facts been as appellant contends, his argument would be well taken. However, the evidence adduced at trial, if believed, not only proved appellant guilty of conspiracy to commit murder but also of the substantive offense of murder. The evidence was that he solicited the murder, that he and Morrow conspired to commit the murder at a separate meeting, he transported Morrow to and from the murder site, he provided two loaded weapons for the killing, and he made payment to Morrow of $1,500.00. At common law, he would not have been an accessory before the fact as he urges. Appellant did not simply procure the crimes; he was an actual participant even though he did not pull the triggers. Oklahoma statutes at any rate deal with an accessory before the fact as a principal.

All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.

21 O.S.1981, § 172. The liabilities between accessories before the fact and principals are no longer distinguishable. 22 O.S.1981, § 432.

Appellant's assertion that he was convicted of "murder for hire" is meritless. He has captured a provision from the death penalty statutes to create the new crime bearing this name. The provision appellant seeks to incorporate as an element of first degree murder is in fact an aggravating circumstance a jury may consider during sentencing in assessing the death penalty. Section 701.12(3), Title 21 of the Oklahoma Statutes provides that if a defendant is convicted of first degree murder, the prosecutor may request the death penalty and prove any of eight circumstances. The death penalty was not requested in appel-

lant's case. All forms of first degree murder are defined in 21 O.S.Supp.1989, § 701.7, and none include remuneration as an element. From the foregoing, we conclude that neither the facts nor the law supports appellant's arguments.

This Court has previously held that conspiracy to commit murder and the substantive crime of murder are separate and distinct crimes, complete apart from one another. *Harjo v. State*, 797 P.2d 338 (Okl. Cr.1990). Citing *Stohler v. State ex rel. Lamm*, 696 P.2d 1038 (Okl.Cr.1985), the *Harjo* opinion explains that under the "same evidence" test established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), conviction of both conspiracy to commit murder and murder does not violate double jeopardy protection because each contains at least one element the other does not.[1] *Harjo*, 797 P.2d at 343. These rules apply to the case at bar.

Appellant contends that application of the "same evidence" test does prove a double jeopardy violation. He argues that the evidence proving he hired the killer is the same evidence that proved he conspired and this same evidence is the basis for his liability for the murder. In other words, the evidence that he hired the killer is the basis for his liability in both crimes. As noted earlier, however, he was not liable for the murder only as one who hired the killer. He was liable as a participant. He could have been convicted of the murder even if the conspiracy portion of the evidence had not been admitted. Conversely, he could have been convicted of conspiracy even had the murder not been proven. This assignment is without merit.

•

## II.

■ Appellant next assigns as error the admission of testimony from coconspirator Morrow without the trial court first conducting a hearing to determine whether there was independent evidence connecting appellant to the conspiracy. In *Laske v. State*, 694 P.2d 536 (Okl.Cr.1985), this

---

**1.** This writer expressed in *Stohler* a preference for the "same transaction" test. However, I yield my view to the majority on the basis of *stare decisis.* ·

Court held that a coconspirator's statement concerning the conspiracy can only be admitted against the defendant if the trial judge determines first that there is independent evidence connecting the defendant to the conspiracy. See as well our recent opinion in *Harjo*, 797 P.2d at 343–45 (Okl. Cr.1990). The rule, however, does not extend to the direct in-court testimony of a coconspirator. *Johns v. State*, 742 P.2d 1142 (Okl.Cr.1987). The testimony of Morrow was not hearsay under 12 O.S.1981, § 2801(3), since it constituted statements made in court and under oath. They were party admissions according to 12 O.S.1981, § 2801(4)(b)(1). Therefore, the hearing prescribed by *Laske* was not required.

There was testimony introduced at trial from a number of witnesses admitting out-of-court declarations made by Morrow concerning the conspiracy. Appellant claims that a *Laske* hearing determining whether there was independent evidence of appellant being involved in the conspiracy should have been conducted prior to their admission. However, we find that Morrow's testimony was sufficient independent evidence of a conspiracy and of appellant's participation in it. *United States v. Smith*, 692 F.2d 693 (10th Cir.1982).

■ Appellant further cites testimony of several witnesses which he contends was inadmissible hearsay. Most of the statements of which appellant complains were introduced without objections at trial. One such statement was that of Roger Lechner, who told Lonnie Smith (the proprietor of Smith Motors) that "they really did it." He testified that he made this statement to Smith the day after the shootings. Smith also testified that Lechner made the statement. We do not agree that the remark was inadmissible hearsay since it was not offered to prove the truth of the matter asserted, but rather to simply prove the statement was made. 12 O.S.1981, § 2801(3).

■ Robert Downs was a young man who traveled to New Jersey with Morrow the day after the shootings. He testified to various statements of Morrow, such as that "Huck" had paid him $1,500.00 to shoot two women. Downs' testimony was not hearsay according to 12 O.S.1981, § 2801(4)(a)(2), because it was consistent with Morrow's prior testimony and rebutted appellant's innuendos of recent fabrication and improper influence.

■ Clara Canady, Eli Hudson, and Eric Chatman each spent time with Morrow during the evening of the shootings and testified of remarks of Morrow of the same nature. We find that these also were not hearsay, but were prior consistent statements.

Two witnesses testified without objection to seeing a dark sports car around the evening of the shootings. One was a convenience store clerk who saw Morrow spend time in the store and then go talk to an unidentified individual in a dark sports car sometime in March 1987. The other was the husband of a cousin of the shooting victims. He had driven past the shooting scene during the evening of March 30th and had seen a black Trans Am parked by Hendryx's home. Appellant asserts without authority that this was incompetent evidence. We do not agree.

### III.

■ Appellant next asserts that the magistrate who conducted his preliminary hearing erred in binding him over for trial on any crime other than conspiracy because there was insufficient evidence to find probable cause that appellant had committed murder and shooting with intent to kill. The essence of appellant's contention is that apart from inadmissible hearsay, there was no evidence to connect him to the shootings.

The standard of review for sufficiency of evidence at preliminary hearing is whether there was evidence of the crimes and probable cause to believe the particular defendant committed the offenses. *Burnett v. State*, 760 P.2d 825 (Okl.Cr.1988). Morrow did not testify at appellant's preliminary hearing. However, the magistrate ruled that there was independent evidence of a conspiracy between appellant and Morrow; a portion of that evidence being the testi-

mony of several witnesses who heard appellant ask about a killer for hire at Smith Motors. He then considered evidence of Morrow's out of court declarations to others concerning the crimes, which inculpated appellant. 12 O.S.1981, § 2801(4)(b)(5). The statements of the coconspirator are not hearsay. The magistrate considered only those statements by Morrow made in the furtherance of the conspiracy and made up until the time of the shootings, and justifiably found probable cause to believe appellant was guilty of murder and shooting with intent to kill.

It was not required that the State prove the charges beyond a reasonable doubt at the preliminary hearing. *Johnson v. State*, 731 P.2d 424 (Okl.Cr.1986). There is a presumption that the State will strengthen its evidence at trial. *Diaz v. State*, 728 P.2d 503 (Okl.Cr.1986).

### IV.

■ Appellant asserts that there was insufficient evidence of malice aforethought to convict him of Murder in the First Degree. He bases this argument on the failure of the evidence to demonstrate animosity of Patsy Hendryx' ex-husband toward Joyce Lambert. Title 21 O.S.Supp.1989, § 701.7(A), defines premeditated murder as:

A person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

It can be seen from this definition that malice aforethought requires nothing more than the deliberate intention to take the life of another without justification. This intent may be "formed instantly before committing the act by which it is carried into execution." 21 O.S.1981, § 703.

It was not necessary that appellant or Morrow or anyone know or feel ill will toward Lambert to impute guilt for her premeditated murder. And even though there was evidence to the contrary, it was not necessary that they had even anticipated her presence at the shooting scene to have committed premeditated murder.

Morrow testified at trial that while appellant drove him to Patsy Hendryx' home the evening of the shootings, appellant informed him that there may be someone accompanying Hendryx. If so, Morrow was to "take care" of both of them. Lambert was reportedly living with her sister at the time.

Under 21 O.S.1981, § 703, even if Morrow formed the intent to shoot Lambert the moment he saw her, the killing would still constitute premeditated murder. The external circumstances demonstrate Morrow's deliberate intent to kill both Hendryx and Lambert. Morrow took two lethal weapons to Hendryx' home where he lay in wait for his victims. He shot each at a distance and after they fell to the ground, he approached them and shot each in the head.

Appellant's guilt for Lambert's death was that of a principal. 21 O.S.1981, § 172; *VanWoundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

The law is well established that when a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said or done pursuant to the conspiracy by their coconspirators until the purpose has been fully accomplished. If two or more persons conspire to combine to commit a felony, each is criminally responsible for the act of his associates and confederates in furtherance of the common design, if the criminal act thoroughly results from the common enterprise, or where the connection between them is reasonably apparent.

*Hatch v. State*, 662 P.2d 1377, 1382 (Okl.Cr.1983), *after remand* 701 P.2d 1039 (Okl.Cr.1985), citing *Jemison v. State*, 633 P.2d 753 (Okl.Cr.1981).

We find there was sufficient evidence from which a rational trier of fact could have determined that Morrow acted with a

deliberate intent to kill Lambert. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985).

## V.

█ As appellant's final assignment of error, he charges that his sentences were not imposed in compliance with the law because, although he was eligible, he did not receive suspended or deferred sentences according to 22 O.S.Supp.1989, § 991a and § 991c, respectively, nor concurrent sentences according to 22 O.S. Supp.1985, § 976.

The trial judge sentenced appellant according to the jury's recommendation following the submission of a presentence report from the Department of Corrections, which report recommended that appellant be incarcerated. In the record made at sentencing, the judge said that he based his decision to run the sentences consecutively upon the evidence at trial and the presentence report. Appellant charges the trial judge intended to punish him for going to trial.

We find appellant's assertions meritless and his charges unsubstantiated. The giving of suspended and deferred sentences lies within the discretion of the trial court. *White v. State*, 702 P.2d 1058 (Okl.Cr.1985). This Court reviews for abuse of that discretion and finds none in this case. The fact that appellant had no prior felony conviction does not dictate the giving of a suspended or deferred sentence. *Grant v. State*, 703 P.2d 943 (Okl.Cr.1985). A sentencing judge also has discretion to run sentences concurrently. 22 O.S.Supp.1985, § 976. We do not find abuse of this discretion either. We find no error.

Accordingly, the Judgements and Sentences are AFFIRMED.

LANE, V.P.J., and JOHNSON, J., concur.

BRETT, J., specially concurs.

LUMPKIN, J., concurs in results.

BRETT, Judge, special concurrence.

I agree that appellant's convictions should be affirmed, however, I feel it necessary to discuss one aspect of the hearsay problem. The testimony of Robert Downs, the young man who traveled to New Jersey with Morrow the day after the shootings, that was objected to at trial by defense counsel was as follows:

Q. Tell us what he said.

A. He said, he said that um he jumped over a fence and hid under a truck and waited and there was supposed to be one woman and another one showed up so he shot the two women.

Q. Did he tell you anything about who he was doing this for?

A. Yes.

Q. Tell us.

A. A guy named Huck.

Q. That the word he used, Huck?

A. Yes.

(Tr. 339–40). The majority states that this was admissible as it was not hearsay under 12 O.S.1981, § 2801(4)(a)(2) "because it was consistent with Morrow's prior testimony and rebutted defendant's innuendos of recent fabrication and improper influence." (Majority at p. 7) In order for a statement to qualify under 12 O.S.1981, § 2801(4)(a)(2) as a prior consistent statement, two foundational requirements must be met. First, there must have been a suggestion that the witness has either fabricated his trial testimony or has been unduly influenced. Second, it must be established that the consistent statement was made prior to the time when there was a motive for the witness to lie or there was an exercise of improper influence. 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 263 (1985). *See also Plotner v. State*, 762 P.2d 936, 943 (Okl.Cr.1988).

In the case at bar, during the cross-examination of William Frank Morrow (the triggerman), defense counsel insinuated that the witness was lying to protect his own life. Morrow pled guilty to the charges in exchange for his testimony against appellant for which he received two life sentences rather than the possibility of getting the death penalty. Therefore, the suggestion was made that Morrow's testimony was influenced or fabricated. And obviously, the statements made to Robert

Downs were made before the Bill of Particulars was filed against Morrow. Therefore, even though the record does not reflect the precise grounds upon which the trial court allowed in the statement, it was probably admitted as a prior consistent statement of Morrow.

The Court has held in a case similar to the one at bar, that such a statement was inadmissible hearsay. *Kelly v. State,* 692 P.2d 563 (Okl.Cr.1984). In that case, the trial court allowed a witness to testify about a conversation between him and an accomplice to the murder. This conversation occurred two days after the crime was committed and included details such as that the defendant hired the accomplice to kill the victim. However, in *Kelly* the court did not find that the statement was a prior consistent statement as in the case at bar and the State could not demonstrate that the statement fell within any other exception to the hearsay rule. Therefore, the statement was properly admitted at trial.