Joe William **HACKNEY**, Appellant,

v.

**STATE** of Oklahoma, Appellee.

No. F–91–550.

Court of Criminal Appeals of Oklahoma.

May 5, 1994.

Edward T. Tillery, Pauls Valley, for appellant at trial.

Charles Douglas, Asst. Dist. Atty., Pauls Valley, for appellee at trial.

Jeff Nix, Tulsa, for appellant on appeal.

Susan B. Loving, Atty. Gen. of Oklahoma, Andrea P. Johnson, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

CHAPEL, Judge:

Joe William Hackney was tried by jury in three cases before the Honorable J. Kenneth Love in the District Court of Garvin County. He was convicted of Murder in the First Degree (21 O.S.1981, § 701.7) in CRF–90–93, Conspiracy to Commit a Felony (robbery with a dangerous weapon) (21 O.S.1981, § 421) in CRF–90–94, and Assault and Battery with a Deadly Weapon (21 O.S.1981, § 652) in CRF–90–95. Hackney was sentenced to life without parole for the murder charge and to ten-year and twenty-year prison terms for the conspiracy and assault charges, respectively.[1] From these judgments and sentences, Hackney has perfected this appeal.

The cases arise from events that occurred on March 12, 1990. Although the record reveals different versions of what happened that day, the following account is rendered from the details on which witnesses do not disagree.

Hackney lived with co-defendant Lisa Adams and knew co-defendants Shane Beauchamp and Donald Ray Wilson.[2] Hackney was friends with the victims William Gentry and Steve Northington, who lived in Texas but often travelled on business to Oklahoma. On May 12, 1990, the defendants devised and botched a scheme to rob the victims. Adams was to act as a decoy victim. She arranged for Gentry and Northington to visit her trailer that evening. When they arrived, Adams greeted them, talked for a few minutes, and took them to the east bedroom to smoke marijuana. Beauchamp and Wilson were concealed in a back bedroom where Hackney had retired earlier. Beauchamp, carrying a sawed-off shotgun, and Wilson, armed with a .357 Magnum pistol, burst into the east bedroom and yelled for everyone to hit the floor. As Beauchamp entered the room, the shotgun fired, killing Gentry. At this point, Adams evidently abandoned her decoy victim's role in the plan. She or Beauchamp then stole $2,600 from Northington's pockets. Northington's eyes, ears, nose, mouth, hands and feet were bound with duct tape. He was dragged into the living room, where Adams stabbed him three times. Both victims were put in Northington's pickup bed. Hackney accompanied Adams as she drove the truck to a bridge. Beauchamp and Wilson followed. Hackney and Wilson dumped both bodies over the railing approximately 30 feet into the river. Hackney assisted in disposing of the truck and burning, concealing and cleaning up evidence in and around the trailer. Meanwhile, Northington, whose injuries were not fatal, had freed himself from the duct tape, made his way to a nearby home and called authorities.[3]

■ Hackney raises two propositions of error. We discuss his second proposition first. Hackney claims the trial court erred in failing to evaluate the testimony of co-conspirators outside the presence of the jury before allowing the testimony in evidence.[4]

1. I believe that convicting a person of both conspiracy to commit a felony and the underlying felony violates state and federal prohibitions against double jeopardy. See Weller v. State, 64 OBJ 3594 (Okl.Cr. Nov. 29, 1993) (Chapel, J., Concurring in Part/Dissenting in Part); Murdock v. State, 64 OBJ 3594 (Okl.Cr. Nov. 29, 1993) (Chapel, J., Concurring in Part/Dissenting in Part). However, the view expressed by a majority of this Court is that the crime of conspiracy to commit a felony is separate and distinct from the underlying felony. See, e.g., Huckaby v. State, 804 P.2d 447, 449–50 (Okl.Cr.1990). Accordingly, I yield my view to the majority and uphold the convictions in the present case on the basis of stare decisis.

2. Adams and Beauchamp pled guilty before trial and testified for the State at Hackney's trial. Wilson's trial was severed from Hackney's. At Hackney's trial he called Wilson as a defense witness but Wilson refused to testify.

3. Again, the record reveals conflicting stories, but it is known that at some point Wilson pistol-whipped Northington. Additionally, Hackney testified that he knew Northington was alive when he was thrown in the river.

4. Hackney relies on Laske v. State, 694 P.2d 536 (Okl.Cr.1985), as modified by Harjo v. State, 797 P.2d 338, 343–45 (Okl.Cr.1990), following Bourjaily v. U.S., 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Laske sets forth the procedure for determining admissibility of hearsay co-conspirator evidence and directs trial courts to hold an in camera hearing when following these procedures. The trial court must determine as a factual matter whether the state has shown by preponderance of the evidence independent of

No hearsay statements of co-conspirators were introduced at trial; rather, Beauchamp and Adams testified. In *Johns v. State*, 742 P.2d 1142, 1146-47 (Okl.Cr.1987), this Court held that independent evidence is not necessary where co-conspirator statements are admitted through direct trial testimony subject to cross-examination, because the direct testimony of co-conspirators is not hearsay. A co-conspirator may testify concerning his own participation and his observation of co-conspirators' conduct, *Johns*, 742 P.2d at 1146.[5] In *Huckaby v. State*, 804 P.2d 447 (Okl.Cr.1990), this Court cites *Johns* in holding that the *Laske* and *Harjo* rule requiring independent evidence before the admission of a co-conspirator's statements does not apply to the direct in-court testimony of a co-conspirator, 804 P.2d at 451. *Huckaby* held that a co-conspirator's in-court direct testimony was sufficient independent evidence of a conspiracy and of appellant's participation in it, *Id.* In *Jemison v. State*, 633 P.2d 753, 755 (Okl.Cr.1981), the Court held that in-court accomplice testimony, corroborated in part by some other evidence, was sufficient independent evidence to connect the defendant to the crime. No independent evidence was required before the testimony of Beauchamp and Adams was admitted. Hackney's second proposition is without merit.

■ Although Hackney's first proposition of error appears to complain that the State proved no "overt acts" by Hackney in furtherance of the conspiracy, his argument leads to an insufficiency of evidence claim that he conspired with co-defendants. This Court will review the evidence in the light most favorable to the State, and will not disturb the verdict if any rational trier of fact could find the essential elements of the crimes charged beyond a reasonable doubt, *Spuehler v. State*, 709 P.2d 202, 203-204 (Okl. Cr.1985).

■ The elements of a conspiracy are (1) an agreement to commit the crime(s) charged, and (2) an overt act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose. 21 O.S.1981, §§ 421, 423. These elements may be proved by circumstantial evidence from which the existence of a conspiracy may be inferred, *Davis v. State*, 792 P.2d 76, 81 (Okl.Cr.1990); *Fetter v. State*, 598 P.2d 262, 265 (Okl.Cr. 1979); *Pearson v. State*, 556 P.2d 1025, 1030 (Okl.Cr.1976). Whether an actual agreement was made is for the trier of fact, *Davis v. State*, 792 P.2d at 81; *Russell v. State*, 654 P.2d 1058, 1066 (Okl.Cr.1982). Furthermore, this Court will not disturb a decision if there is reasonable evidence upon which the trier of fact may base a finding that an agreement existed, *Davis*, 792 P.2d at 81.

■ Beauchamp's and Adams' testimony provided independent evidence that a conspiracy existed. Their testimony was corroborated in part by other State witnesses.[6] Adams testified that Hackney planned and instigated the robbery and that he told her to kill Northington. Beauchamp placed more blame on Adams but substantially agreed with her story. Other than co-conspirator testimony, very little evidence was presented which connected Hackney with the crimes;[7] however, a rational trier of fact could find an agreement existed from the evidence presented.

the statement itself that (a) a conspiracy existed; (b) the co-conspirator and defendant against whom the statement is offered were members of the conspiracy; and (c) the statement was made during the course of and in furtherance of the conspiracy. The court may consider statements of the alleged co-conspirator in determining whether the state has made the requisite factual showing.

5. Citing *United States v. Smith*, 692 F.2d 693, 697-98 (10th Cir.1982), *Johns* implies that co-conspirator testimony equals sufficient independent evidence of a conspiracy and co-conspirator participation therein, 742 P.2d at 1146.

6. Co-conspirator testimony need not be corroborated in all material respects. The jury may infer corroboration of all the testimony if one material fact or facts of independent evidence that tend to connect a defendant with the crime corroborate the testimony. *Johns*, 742 P.2d at 1146.

7. Hackney admitted participating only in disposing of the bodies and cleaning up after the crimes. Northington testified he did not see Hackney that night. Slight physical evidence connected Hackney to cleaning up after the crimes. Hackney neither shot nor stabbed either victim. Hackney did have a large sum of cash on him at booking.

 Hackney did not commit any overt act in furtherance of the conspiracy. The co-conspirators did: Adams called the victims and invited them to the trailer, then lured them into the east bedroom while Beauchamp and Wilson concealed themselves. Co-conspirators are responsible for all that is said and done pursuant to the conspiracy until its purpose is accomplished, *State v. Davis,* 823 P.2d 367, 370 (Okl.Cr.1991). The trier of fact could have found the existence of an overt act by the evidence presented. An agreement and an overt act were present, thus Hackney's claims in respect to conspiracy and murder are without merit.

 The count of assault and battery with a dangerous weapon was not charged as part of the conspiracy, and the jury was instructed on the theory that Hackney aided and abetted this crime.[8] Aiding and abetting requires acts, words, or gestures encouraging the commission of an offense before or at the time of the offense. *Van Woundenberg v. State,* 720 P.2d 328, 333 (Okl.Cr.1986), cert. denied, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1992); *Rounds v. State,* 679 P.2d 283 (Okl.Cr.1984); *Frazier v. State,* 624 P.2d 84 (Okl.Cr.1981). Mere presence at or acquiescence in a crime without participation does not equal a crime. *Walker v. State,* 738 P.2d 181, 183 (Okl.Cr.1987). It is the exclusive province of the jury to weigh evidence and determine the facts, and this Court will not disturb a verdict where evidence supports the jury's findings. *McBrain v. State,* 763 P.2d 121, 124 (Okl.Cr.1988); *Smith v. State,* 640 P.2d 988 (Okl.Cr.1982); *Morris v. State,* 607 P.2d 1187, 1190 (Okl.Cr.1980).

 Only slight participation is needed to change a person's status from mere spectator to aider and abettor. *McBrain,* 763 P.2d at 124–125; *Sartin v. State,* 637 P.2d 897, 899 (Okl.Cr.1981); *Smith v. State, supra.* Adams and Beauchamp both testified that Hackney told them to kill Northington, and Adams subsequently stabbed Northington three times. Evidence supports the jury's finding, and this proposition is without merit.

8. The information need not specifically allege that a defendant aided and abetted an offense, and need only allege facts required to charge the

Hackney's judgments and sentences are AFFIRMED.

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE, and STRUBHAR, JJ., concur.

crime against the defendant, *Rounds v. State,* 679 P.2d 283, 287 (Okl.Cr.1984).