ROWLAND, JUDGE:
 

 ¶ 1 Appellant Immanuel Gerald Dean Mitchell appeals his Judgment and Sentence from the District Court of Pottawatomie County, Case No. CF-2015-435, for Murder in the First Degree-Felony Murder (Count 1) in violation of 21 O.S.Supp.2012, § 701.7(B) and Conspiracy to Commit Robbery with a Dangerous Weapon (Count 2) in violation of 21 O.S.2011, § 421.
 
 [1]
 
 The Honorable John Canavan, Jr. presided over Mitchell's jury trial and sentenced him in accordance with the jury's verdict to life imprisonment on Count 1 and eight years imprisonment on Count 2.
 
 [2]
 
 Judge Canavan ordered Mitchell's sentences to run consecutively. Mitchell raises the following issues:
 

 I. whether the district court's failure to hold a hearing on the admissibility of the alleged co-conspirators' statements violated his rights to a fair trial and due process of law;
 

 II. whether the State presented sufficient evidence to corroborate the testimony of his accomplices;
 

 III. whether the evidence was sufficient to sustain his convictions;
 

 IV. whether Instruction Number 1-8A, OUJI-CR(2d) improperly shifted the burden of proof;
 

 V. whether the prosecutor's statement during jury selection concerning parole eligibility was error;
 

 VI. whether the district court erred by not removing
 
 sua sponte
 
 two prospective jurors for cause;
 

 VII. whether his jury panel was tainted;
 

 VIII. whether prosecutorial misconduct deprived him of a fair trial;
 

 IX. whether the district court erred in admitting text messages between the members of the conspiracy;
 

 X. whether he was denied a fair trial because of ineffective assistance of counsel; and
 

 XI. whether cumulative error deprived him of a fair trial.
 

 ¶ 2 We find reversal is not required and affirm the Judgment and Sentence of the district court.
 

 Background
 

 ¶ 3 Early on the morning of May 4, 2015, officers with the Shawnee Police Department responded to a 911 call from a citizen stating that a red car had crashed through her fence and into a tree in her backyard. Inside this car, the officers found John Columbus unresponsive and slumped over in the driver's seat with a fatal bullet wound to his back.
 

 ¶ 4 The evidence showed that Columbus had driven to that neighborhood to sell marijuana to Ramie Brown, who had arranged to meet him at Mitchell's house. Little did Columbus know that Brown and Austin Olinger had devised a scheme to rob him of his marijuana, or that they would soon involve Mitchell, Cody Taylor, and Kiwane Hobia in their criminal conspiracy. The plan was for Brown to get into the car with Columbus to make the purchase and, when Columbus produced the marijuana, to grab it and flee. Needing a ride to Mitchell's house, Olinger called Taylor who arrived in his white Chevrolet Trailblazer and he drove Brown and Olinger to Mitchell's, the designated meeting place.
 

 ¶ 5 When Columbus arrived at Mitchell's house, Brown got into Columbus' car as planned and the two drove away. When Brown asked where they were going, Columbus explained that he did not have the marijuana with him and that they were heading to his house to get it. Brown then informed Columbus that he did not have the purchase money with him and the two of them returned to Mitchell's house. Brown got out and told Olinger, Mitchell, and Hobia that Columbus wanted his money up front, prompting a change of plan. Brown rejoined Columbus and Olinger, Mitchell and Hobia also got into Columbus' car. Columbus followed Olinger's directions, believing he was going to where the money was. Columbus parked in a nearby parking lot as directed and guns were pointed at his and Brown's heads. Brown testified that Mitchell was the one pointing a gun at Columbus and that he instructed Columbus not to move. Brown exited the car and ran, but before he was out of the parking lot, he heard a gunshot. He turned in time to see Mitchell standing outside the car behind the driver's side door with a pistol in his hand. The conspirators all scattered on foot.
 

 ¶ 6 Taylor, who had stayed behind at Mitchell's house, picked up a somewhat excited Olinger and Hobia, who were out of breath and barely talking. Olinger directed Taylor to the crime scene parking lot where he got out and grabbed a gun holster lying by the curb before the three returned to Mitchell's house. Mitchell was at his house and out of breath like he had been running. Mitchell asked Taylor to go for cigarettes. Olinger went with Taylor, but the two were pulled over by police on their way back from the store. The officers noted a strong odor of marijuana coming from inside Taylor's Trailblazer. A search of the Trailblazer uncovered the gun holster Olinger retrieved from the parking lot and two loaded handguns as well as a bag of marijuana in Olinger's pocket.
 

 ¶ 7 Brown was arrested the next day and Mitchell was apprehended a couple of weeks later. Both Brown and Taylor testified against Mitchell at trial. In addition to this accomplice testimony, the State presented evidence that connected Mitchell to the murder weapon as well as text messages that showed Mitchell was an active participant in the commission of the robbery that resulted in Columbus' death.
 

 1.
 
 Harjo
 
 Hearing
 

 ¶ 8 Mitchell contends his convictions must be reversed because the district court failed to hold an
 
 in camera
 
 hearing, pursuant to
 
 Harjo v. State
 
 ,
 
 1990 OK CR 53
 
 ,
 
 797 P.2d 338
 
 , to determine the existence of a conspiracy before admitting his co-conspirator's statements. Review is for plain error only because Mitchell did not request a
 
 Harjo
 
 hearing below or challenge the admission of his co-conspirator's testimony on this basis at trial. This claim is without merit.
 

 ¶ 9 Under the plain error test, the burden is on Mitchell to show the existence of an actual, obvious error that affected his substantial rights.
 
 Hogan v. State,
 

 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d 907
 
 , 923.
 
 See also
 

 Simpson v. State
 
 ,
 
 1994 OK CR 40
 
 , ¶¶ 10 & 30,
 
 876 P.2d 690
 
 , 694 & 700-01. This Court will correct plain error only if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings or otherwise represented a miscarriage of justice.
 
 Hogan
 
 ,
 
 2006 OK CR 19
 
 , ¶ 38,
 
 139 P.3d at 923
 
 .
 

 ¶ 10 Mitchell challenges the in-court direct testimony of his co-conspirator, Ramie Brown.
 
 [3]
 
 Independent evidence establishing the existence of a conspiracy is not necessary where coconspirator statements are admitted through direct trial testimony subject to cross-examination, because the direct testimony of the co-conspirator is not hearsay.
 
 Hackney v. State
 
 ,
 
 1994 OK CR 29
 
 , ¶ 4,
 
 874 P.2d 810
 
 , 813 ;
 
 Johns v. State
 
 ,
 
 1987 OK CR 178
 
 , ¶¶ 7-8,
 
 742 P.2d 1142
 
 , 1146. Consequently, a co-conspirator may testify concerning his own participation and his observation of other co-conspirators' conduct.
 
 Hackney
 
 ,
 
 1994 OK CR 29
 
 , ¶ 4,
 
 874 P.2d at 813
 
 . The rule in
 
 Harjo
 
 -requiring independent evidence of a conspiracy during an
 
 in camera
 
 hearing prior to the admission of a co-conspirator's statements-applies only to the admission of a co-conspirator's out-of-court statements and does not apply to the direct in-court testimony of a co-conspirator.
 
 Huckaby v. State
 
 ,
 
 1990 OK CR 84
 
 , ¶ 13,
 
 804 P.2d 447
 
 , 451. Under our cases, no independent evidence of a conspiracy was required before Brown took the witness stand and testified against Mitchell. The district court properly admitted Brown's testimony without a
 
 Harjo
 
 hearing because one was not required.
 
 See
 

 Hackney
 
 ,
 
 1994 OK CR 29
 
 , ¶ 4,
 
 874 P.2d at 813
 
 . For these reasons, we find that Mitchell has not shown that error, plain or otherwise, occurred. This claim is denied.
 

 2. Sufficiency of the Evidence/Accomplice Corroboration
 

 ¶ 11 Mitchell contends his convictions must be reversed because of insufficient evidence. Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, any rational trier of fact could find the defendant guilty beyond a reasonable doubt.
 
 Coddington v. State
 
 ,
 
 2006 OK CR 34
 
 , ¶ 66,
 
 142 P.3d 437
 
 , 455 ;
 
 Spuehler v. State
 
 ,
 
 1985 OK CR 132
 
 , ¶ 7,
 
 709 P.2d 202
 
 , 203-04. This Court does not reweigh conflicting evidence or second-guess the fact-finding decisions of the jury; we accept all reasonable inferences and credibility choices that tend to support the verdict.
 
 See
 

 Day v. State,
 

 2013 OK CR 8
 
 , ¶ 13,
 
 303 P.3d 291
 
 , 298 ;
 
 Coddington,
 

 2006 OK CR 34
 
 , ¶ 70,
 
 142 P.3d at 456
 
 . We further recognize that the law makes no distinction between direct and circumstantial evidence and either, or any combination of the two, may be sufficient to support a conviction.
 
 Miller v. State
 
 ,
 
 2013 OK CR 11
 
 , ¶ 84,
 
 313 P.3d 934
 
 , 965.
 

 ¶ 12 Mitchell argues the evidence was insufficient in this case because the State failed to present evidence that corroborated the testimony of his accomplices, namely Ramie Brown and Cody Taylor. This case provides us with the opportunity to revisit the unwarranted disparate treatment of accomplice and co-conspirator testimony and the requirement of corroboration.
 

 ¶ 13 Title 22 O.S.2011, § 742 states:
 

 A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show[s] the commission of the offense or the circumstances thereof.
 

 ¶ 14 In
 
 Pink v. State
 
 ,
 
 2004 OK CR 37
 
 , ¶¶ 32-33,
 
 104 P.3d 584
 
 , 595-96, the Court held that a co-conspirator's testimony is not subject to the requirement of independent corroboration that is required of an accomplice's testimony under 22 O.S.2011, § 742.
 
 Pink
 
 , however, employed a faulty analysis by confusing the admissibility of a co-conspirator's in-court testimony with the admissibility of his out-of-court statements in furtherance of
 the conspiracy under 12 O.S.2011, § 2801(B)(2)(e).
 

 ¶ 15 The genesis of this confusion is found in paragraphs 27 and 28 of the
 
 Pink
 
 decision wherein this Court noted that the former Oklahoma Uniform Jury Instruction Nos. 9-17 and 9-39 "provide conflicting signals about whether a jury should be given special instructions regarding coconspirator testimony, and in particular, whether such testimony should be evaluated in the same manner as accomplice testimony."
 
 Pink,
 

 2004 OK CR 37
 
 , ¶ 28,
 
 104 P.3d at 594
 
 . A closer look, however, reveals there is no actual conflict because these two former instructions addressed completely different situations: OUJI-CR (2d) 9-17 concerned out-of-court statements offered pursuant to the co-conspirator hearsay exception ( 12 O.S.2011, § 2801(B)(2)(e) ) for statements in furtherance of a conspiracy for which no corroboration is required for admission while OUJI-CR (2d) 9-39 concerned the in-court testimony of one conspirator against another for which corroboration is required in order to sustain a conviction that rests upon the co-conspirator's testimony if the co-conspirator qualifies as an accomplice.
 

 ¶ 16 The
 
 Pink
 
 Court reversed the defendant's robbery conviction in that case because it was based upon the uncorroborated testimony of two accomplices. It affirmed, however, the defendant's conspiracy conviction that rested upon the very same accomplice testimony from the same accomplice witnesses. The Court, in reviewing Pink's sufficiency of the evidence challenge for conspiracy, made a distinction concerning the status of these accomplice witnesses labeling them co-conspirators for purposes of Pink's conspiracy conviction and finding their testimony as such required no corroboration. The corroboration requirement of accomplice testimony in Section 742 cannot be so easily circumvented. An accomplice is one who is or could be charged for the offense for which the accused is being tried.
 
 Sellers v. State
 
 ,
 
 1991 OK CR 41
 
 , ¶ 30,
 
 809 P.2d 676
 
 , 686. Obviously in most, if not all, instances this definition will include one who conspires with the defendant to commit a crime.
 
 See
 

 Hackney,
 

 1994 OK CR 29
 
 , ¶ 8,
 
 874 P.2d at 814
 
 ("Co-conspirators are responsible for all that is said and done pursuant to the conspiracy until its purpose is accomplished.") One's status as a co-conspirator neither alters that same person's status as an accomplice nor does it change the requirement under 22 O.S.2011, § 742 that his or her testimony be corroborated. In other words, testimony of an accomplice, including one who is also a co-conspirator, requires corroboration under 22 O.S.2011, § 742 for both the substantive crime as well as any alleged conspiracy.
 
 [4]
 
 Out-of-court statements by that co-conspirator, properly admitted pursuant to 12 O.S.2011, § 2801(B)(2)(e), are substantive evidence and are admissible to corroborate his in-court testimony.
 
 See
 

 Omalza v. State
 
 ,
 
 1995 OK CR 80
 
 , ¶ 13,
 
 911 P.2d 286
 
 , 295-96.
 

 ¶ 17 We overrule
 
 Pink
 
 to the extent it eliminates the corroboration requirement under Section 742 for the in-court testimony of a co-conspirator who otherwise meets the definition of an accomplice.
 
 [5]
 
 Reviewing the testimony of the two co-conspirators/accomplices who testified against Mitchell in this case in light of the corroboration requirement of Section 742, we find sufficient evidence in the record to corroborate their testimony and reject Mitchell's sufficiency of the evidence challenge.
 

 3. Sufficiency of the Evidence
 

 ¶ 18 Mitchell again argues that his convictions must be reversed because of insufficient evidence. This time he claims that his conspiracy conviction must be reversed because the State failed to prove that he was a member of the conspiracy to commit armed robbery. Without sufficient evidence of his membership in the conspiracy, he contends that his felony murder conviction cannot stand because it is predicated on the conspiracy. We disagree and evaluate this challenge to the sufficiency of the evidence using the standard set forth in ¶ 11,
 
 supra
 
 .
 

 ¶ 19 The evidence, viewed in the light most favorable to the State, showed that Ramie Brown and Austin Olinger entered into an agreement to rob the victim and that Cody Taylor, Kiwane Hobia and Mitchell later became parties to that agreement. The evidence further showed that one or more of these men performed an overt act in furtherance of their plan. "In a conspiracy prosecution, the critical inquiry is whether the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists."
 
 State v. Davis
 
 ,
 
 1991 OK CR 123
 
 , ¶ 10,
 
 823 P.2d 367
 
 , 370 (quoting
 
 United States v. Kendall,
 

 766 F.2d 1426
 
 , 1431 (10th Cir. 1985) ). The evidence presented sufficiently proved that Mitchell joined the conspiracy after Brown and Olinger made an agreement to rob the victim and that he participated in the plan once it was put into action. Evidence of an unlawful agreement and an overt act in furtherance of the plan is all that is required to support a conviction for conspiracy. 21 O.S.2011, §§ 421 & 423. Based on the record before us, we find that any rational trier of fact could have found beyond a reasonable doubt that Mitchell was guilty of the crime of Conspiracy to Commit Robbery with a Dangerous Weapon.
 

 ¶ 20 We reach the same conclusion concerning Mitchell's conviction for First Degree Felony Murder. The evidence, viewed in the light most favorable to the State, showed that the victim died during the commission of an armed robbery perpetrated by Mitchell and his co-conspirators. 21 O.S.Supp.2012, § 701.7(B). Mitchell's argument that his felony murder conviction was based on his unproven membership in the conspiracy is unpersuasive and unsupported by the record. First, the evidence sufficiently proved Mitchell was a member of the conspiracy as discussed above. Second, and more importantly, the State charged Mitchell with felony murder, alleging that the victim's death occurred during the course of an armed robbery in which Mitchell was an active participant. Mitchell's felony murder conviction was not based on his membership in the conspiracy, but was a discrete offense. The State's evidence proved Mitchell was both a party to the conspiracy and an active participant in the fatal armed robbery. We find on this record ample proof from which any rational trier of fact could find beyond a reasonable doubt that Mitchell was guilty of the crime of First Degree Felony Murder. This claim is denied.
 

 4. Jury Instructions
 

 ¶ 21 Mitchell contends that the district court's uniform opening instruction entitled "Duty of Jurors" impermissibly shifted the burden of proof from the State to the accused. OUJI-CR(2d) No. 1-8A (Supp.2013). Mitchell's failure to raise this issue before the district court forfeits appellate review of the claim for all but plain error under the test in ¶ 9,
 
 supra
 
 .
 

 ¶ 22 Mitchell argues the instruction's explanation that "[i]t is the responsibility of the attorneys to present evidence, to examine, and cross-examine witnesses, and to argue the evidence" contradicts the rule of law that the accused in a criminal trial has no burden of production whatsoever. This Court "will not reverse on instructional error unless the error resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right."
 
 Daniels v. State
 
 ,
 
 2016 OK CR 2
 
 , ¶ 4,
 
 369 P.3d 381
 
 , 383. This Court will deny relief on a claim of jury instruction error when the jury instructions, as a whole, accurately state the applicable law.
 
 See
 

 id.,
 

 2016 OK CR 2
 
 , ¶ 4,
 
 369 P.3d at 384
 
 .
 

 ¶ 23 We are convinced that no reasonable juror would have interpreted the single sentence within the challenged instruction as shifting the burden of proof or persuasion to the defendant, especially in light of the other instructions correctly stating the presumption of innocence and the State's burden of proof.
 
 See
 

 Hunter v. State
 
 ,
 
 1987 OK CR 165
 
 , ¶ 5,
 
 740 P.2d 1206
 
 , 1208 (applying the United States Supreme Court's reasonable jury interpretation test to determine if instruction shifted the burden of persuasion). Accordingly, we find that Mitchell has not shown that error, plain or otherwise, occurred. This claim is denied.
 

 5. Prosecutorial Misconduct
 

 ¶ 24 Mitchell contends that the prosecutor wrongly implied during jury selection that a defendant sentenced to life imprisonment would be paroled after serving 37 years in prison.
 
 [6]
 
 Mitchell raised no objection to the prosecutor's statement when made and he concedes in his brief that he suffered no "specific prejudice" from it.
 
 Appellant's Brief
 
 at 29. We have long followed the principle that there must be error plus injury to warrant relief on appeal.
 
 See
 

 Reed v. State
 
 ,
 
 2016 OK CR 10
 
 , ¶ 12,
 
 373 P.3d 118
 
 , 122. This claim warrants no relief not only because of this long-standing principle but also because Mitchell cannot meet his burden under the plain error test set forth in ¶ 9,
 
 supra.
 

 ¶ 25 The record shows the prosecutor did not imply that parole was automatic once a defendant served 37 years of a life sentence and his statement did not violate our holding in
 
 Florez v. State
 
 ,
 
 2010 OK CR 21
 
 , ¶¶ 5-6,
 
 239 P.3d 156
 
 , 158. The challenged statement was consistent with 21 O.S.Supp.2014, § 13.1 requiring the service of a mandatory minimum term of years before a defendant is eligible to be considered for parole. Because Mitchell has not shown that error, plain or otherwise, occurred, this claim is rejected.
 

 6. Jury Selection
 

 ¶ 26 Mitchell contends that the district court erred when it failed
 
 sua sponte
 
 to remove prospective jurors M.E. and M.D. for cause. Mitchell's failure to raise this issue before the district court forfeits appellate review of the claim for all but plain error under the test in ¶ 9,
 
 supra
 
 .
 

 ¶ 27 Although Mitchell concedes that neither panelist who was purportedly partial ultimately served on his jury, he insists the mere fact that the panelists were not excused for cause deprived him of the due process of law guaranteed by the Fourteenth Amendment to the United States Constitution. "The Due Process Clause ... safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.' "
 
 Rivera v. Illinois
 
 ,
 
 556 U.S. 148
 
 , 158,
 
 129 S.Ct. 1446
 
 , 1454,
 
 173 L.Ed.2d 320
 
 (2009) (quoting
 
 Spencer v. Texas
 
 ,
 
 385 U.S. 554
 
 , 563-564,
 
 87 S.Ct. 648
 
 , 653,
 
 17 L.Ed.2d 606
 
 (1967) ). There is no constitutional violation when no member of the jury as finally composed was removable for cause.
 
 Rivera,
 

 556 U.S. at 158
 
 ,
 
 129 S.Ct. at
 
 1454 ;
 
 Ross v. Oklahoma
 
 ,
 
 487 U.S. 81
 
 , 86-91,
 
 108 S.Ct. 2273
 
 , 2277-80,
 
 101 L.Ed.2d 80
 
 (1988) (finding any claim that jury was not impartial must focus on jurors who ultimately sat); Because Mitchell has not shown that any member of his jury as finally composed was removable for cause, we find no error-constitutional, plain or otherwise-occurred. This claim is denied.
 

 7. Juror Misconduct
 

 ¶ 28 Mitchell argues for the first time on appeal that his jury pool was tainted. Review is for plain error only under the test in ¶ 9,
 
 supra
 
 . Mitchell's assertion that prospective jurors discussed his case over lunch in disregard of the district court's instructions is not supported by the record. The record shows instead that prospective juror A.S. disclosed that she heard something about the case as the potential jurors left for lunch. The State exercised a peremptory challenge to remove A.S. and she did not serve as a juror. Mitchell's concern that the jurors who actually served either possibly heard or discussed things about the case is speculation. His speculation and conjecture concerning what other jurors may have heard is insufficient to establish juror misconduct.
 
 See
 

 Jones v. State
 
 ,
 
 2006 OK CR 5
 
 , ¶ 20,
 
 128 P.3d 521
 
 , 535 ;
 
 Woodruff v. State
 
 ,
 
 1993 OK CR 7
 
 , ¶ 13,
 
 846 P.2d 1124
 
 , 1132 ;
 
 Chatham v. State
 
 ,
 
 1986 OK CR 2
 
 , ¶ 7,
 
 712 P.2d 69
 
 , 71.
 

 ¶ 29 Mitchell further argues that prospective juror S.B.'s responses provided outside information about the case. Not every personal opinion expressed in jury selection results in a tainted venire panel. Otherwise,
 it would be impossible to impanel a jury.
 
 See
 

 Pavatt v. State
 
 ,
 
 2007 OK CR 19
 
 , ¶ 29,
 
 159 P.3d 272
 
 , 282. We find on this record that Mitchell has not shown that S.B.'s comments so affected the panelists who ultimately sat on his jury such that he was denied a fair trial.
 

 Id.
 

 Nothing in the record suggests that Mitchell's jury as finally composed was anything but fair and impartial. There is no evidence any member was removable for cause. As such, we find that Mitchell has not shown that error, plain or otherwise, occurred. This claim is denied.
 

 8. Prosecutorial Misconduct
 

 ¶ 30 Mitchell contends that prosecutorial misconduct deprived him of a fair trial. Mitchell's failure to object to the prosecutor's comments at trial forfeits appellate review of his claim for all but plain error under the test in ¶ 9,
 
 supra
 
 .
 

 ¶ 31 Reviewing the litany of challenged comments and exchanges, we find that the prosecutor did not engage in either improper bolstering or vouching throughout trial.
 
 See
 

 Taylor v. State
 
 ,
 
 2011 OK CR 8
 
 , ¶ 57,
 
 248 P.3d 362
 
 , 379 (quoting
 
 Browning v. State,
 

 2006 OK CR 8
 
 , ¶ 43,
 
 134 P.3d 816
 
 , 841 ("Vouching occurs when a prosecutor expresses a personal belief in a witness's credibility, either through explicit assurances or by implying that other evidence, not presented to the jury, supports the witness's testimony.") );
 
 Nickell v. State
 
 ,
 
 1994 OK CR 73
 
 , ¶ 4,
 
 885 P.2d 670
 
 , 677 (Lumpkin, P.J., specially concurring) ("Bolstering" is the error associated with the "preemptive rehabilitation of a witness."). Similarly, we conclude that the prosecutor did not cast aspersions on the defense. Contrary to Mitchell's claim, the prosecutor did not engage in name-calling, ridiculing or making derogatory comments about either defense counsel or the chosen defense as condemned in
 
 Hanson v. State
 
 ,
 
 2003 OK CR 12
 
 , ¶ 14,
 
 72 P.3d 40
 
 , 49 (finding "prosecutors' repeated characterizations of the defense case as resembling an octupus's ink bag, and hiding from the facts" were inappropriate.);
 
 Coulter v. State
 
 ,
 
 1987 OK CR 37
 
 , ¶ 31,
 
 734 P.2d 295
 
 , 302,
 
 overruled on other grounds by
 

 Davis v. State,
 

 2018 OK CR 7
 
 , ¶ 26 n. 3,
 
 419 P.3d 271
 
 (finding error for prosecutor to ridicule "opposing counsel and the defense by arguing that counsel had presented an 'air defense' and was treating the jurors as if they had just 'fell off an applecart.' ");
 
 Black v. State
 
 ,
 
 1983 OK CR 60
 
 , ¶¶ 11-12,
 
 663 P.2d 22
 
 , 24-25 (finding prosecutor's argument "when it starts to hurt, he objects. That's what you have heard" constituted casting aspersion on opposing counsel). The prosecutor in this case instead asked the jury to make a common sense judgment about the defense's argument in light of the evidence at trial. This argument was well within the wide latitude of argument afforded the parties in closing argument.
 
 See
 

 Pullen v. State,
 

 2016 OK CR 18
 
 , ¶ 13,
 
 387 P.3d 922
 
 , 927 ("Both parties have wide latitude in closing argument to argue the evidence and reasonable inferences from it.")
 

 ¶ 32 Based on the record before us, we find that Mitchell has not shown that error, plain or otherwise, occurred in any of the individual instances of alleged misconduct raised. For this reason, we reject his claim that the cumulative effect of the prosecutor's actions deprived him of a fair trial.
 
 See
 

 Ashton v. State
 
 ,
 
 2017 OK CR 15
 
 , ¶ 54,
 
 400 P.3d 887
 
 , 900. This claim is denied.
 

 9. Evidence
 

 ¶ 33 Mitchell argues that the district court erred in admitting State's Exhibit Nos. 22 through 26, namely the cell phone logs of the victim and several of his co-conspirators. Mitchell's failure to object to the admission of these exhibits on this basis at trial forfeits appellate review of his claim for all but plain error under the test in ¶ 9,
 
 supra
 
 .
 

 ¶ 34 The calls and texts within the logs established the planned exchange between Brown and the victim and showed that the co-conspirators had entered into an agreement to rob the victim. The evidence also corroborated the co-conspirators' testimony at trial and revealed Mitchell's participation in the conspiracy via the text messages he sent and received. The probative value of these exhibits is evident.
 
 Taylor
 
 ,
 
 2011 OK CR 8
 
 , ¶ 40,
 
 248 P.3d at 376
 
 ("Relevant evidence need not conclusively, or even directly, establish the defendant's guilt; it is admissible if, when taken with other evidence in the case, it tends to establish a material fact in issue."). Giving the call logs their maximum
 reasonable probative force and their minimum reasonable prejudicial value,
 
 Stewart v. State
 
 ,
 
 2016 OK CR 9
 
 , ¶ 19,
 
 372 P.3d 508
 
 , 512, we find that the probative value of the logs was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. 12 O.S.2011, § 2403. Accordingly, we find that Mitchell has not shown that error, plain or otherwise, occurred. This claim is denied.
 

 10. Ineffective Assistance of Counsel
 

 ¶ 35 Mitchell argues his case should be reversed because of ineffective assistance of counsel. He faults defense counsel for failing to object to the alleged errors in Propositions 4 through 9.
 

 ¶ 36 This Court reviews claims of ineffective assistance of counsel to determine: (1) whether counsel's performance was constitutionally deficient; and (2) whether counsel's performance prejudiced the defense so as to deprive the defendant of a fair trial with reliable results.
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 (1984) ;
 
 Ashton
 
 ,
 
 2017 OK CR 15
 
 , ¶ 55,
 
 400 P.3d at 900
 
 . Under this test, Mitchell must affirmatively prove prejudice resulting from his attorney's actions.
 
 Strickland,
 

 466 U.S. at 693
 
 ,
 
 104 S.Ct. at
 
 2067 ;
 
 Ashton,
 

 2017 OK CR 15
 
 , ¶ 57,
 
 400 P.3d at 901
 
 .
 

 ¶ 37 The merits of the claims underlying Mitchell's ineffective assistance of counsel challenge have been rejected in the preceding propositions of error. He has failed to show either that error occurred or that error affected the outcome of his case. Consequently, he cannot make the requisite showings of deficient performance and prejudice. Without such proof, we reject Mitchell's ineffective assistance of counsel claim.
 

 11. Cumulative Error
 

 ¶ 38 Mitchell claims that even if no individual error in his case merits reversal, the cumulative effect of the errors committed requires a new trial or dismissal of his convictions. The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal. Although each error standing alone may be of insufficient gravity to warrant reversal, the combined effect of an accumulation of errors may require a new trial.
 
 Martinez v. State,
 

 2016 OK CR 3
 
 , ¶ 85,
 
 371 P.3d 1100
 
 , 1119. Cumulative error does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceeding.
 
 Baird v. State,
 

 2017 OK CR 16
 
 , ¶ 42,
 
 400 P.3d 875
 
 , 886. And clearly, a cumulative error claim is baseless when this Court fails to sustain any of the alleged errors raised on appeal.
 

 Id.
 

 There were no errors, either individually or when considered together, that deprived Mitchell of a fair trial. This claim is denied.
 

 DECISION
 

 ¶ 39 The Judgment and Sentence of the District Court is
 
 AFFIRMED
 
 . Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2018), the
 
 MANDATE
 
 is
 
 ORDERED
 
 issued upon the delivery and filing of this decision.
 

 LUMPKIN, P.J.: CONCUR
 

 LEWIS, V.P.J.: CONCUR
 

 HUDSON, J.: CONCUR
 

 KUEHN, J.: CONCUR
 

 This Court has previously affirmed the convictions of two of Mitchell's co-conspirators.
 
 See
 

 Austin Olinger v. State
 
 , Case No. F-2016-209 (unpublished)(Okl. Cr. April 4, 2017) and
 
 Kiwane Hobia v. State
 
 , Case No. F-2016-1039 (unpublished)(Okl. Cr. February 15, 2018).
 

 Under 21 O.S.Supp.2014, § 13.1, Mitchell must serve 85% of his sentence of imprisonment on Count 1 before he is eligible for parole consideration.
 

 Mitchell cites only the testimony of Brown in this claim although another co-conspirator, Cody Taylor, testified against him as well. Any challenge beyond the cited testimony of Brown is waived. Rule 3.5(A)(5),
 
 Rules of the Oklahoma Court of Criminal Appeals
 
 , Title 22, Ch. 18, App. (2018)(requiring an appellant to include in his or her brief citations to the record where the alleged error occurred or waive the alleged error for review on appeal).
 

 Corroboration is not required for admission of out-of-court statements by co-conspirators under 12 O.S.2011, § 2801(B)(2)(e).
 

 The district court instructed Mitchell's jury that Brown and Taylor were accomplices to the crime of conspiracy whose testimony required corroboration.
 

 Mitchell's concession in his brief-that he was not injured by the prosecutor's statement-eliminated any basis for this Court to order relief. The absence of any injury to Mitchell should have resulted in the removal of this claim from the appeal.
 
 Jones v. Barnes
 
 ,
 
 463 U.S. 745
 
 , 751-52,
 
 103 S.Ct. 3308
 
 , 3313,
 
 77 L.Ed.2d 987
 
 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal" and focusing on key issues.).